PATSY LOU PAYNE JOHNSON v. JULIAN NEAL JOHNSON

No. 7021DC30

(Filed 25 February 1970)

**1. Pleadings § 37— material facts — admitted in answer**

Where a material fact is alleged in the complaint and admitted in the answer, it will, for the purpose of the trial, be taken as true and beyond the range of questioning; evidence controverting the facts so admitted is properly excluded.

**2. Courts §§ 9, 11.1— district court — appeal from one judge to another**

No appeal lies from one district court judge to another, but appeals in civil cases must be from the district court to the Appellate Division of the General Court of Justice.

**3. Courts §§ 9, 11.1; Divorce and Alimony § 22— child custody order — district court — authority of other judges to enter subsequent orders**

An order of a district court judge, which awarded custody of children to the mother upon proper findings that the parties to the child custody proceeding were husband and wife and that the children were born of the marriage, became the law of the case when the father did not appeal therefrom; and consequently, three other district court judges were without authority to enter subsequent orders relating to the husband's motion for a blood grouping test of the parties and the children.

**4. Courts § 11.1; Divorce and Alimony § 22— practice and procedure — district courts — child custody case — "judge shopping"**

The Court of Appeals disapproves of the "judge shopping" procedures in a child custody case, whereby four of the five district judges in a judicial district heard separate fragments of the lawsuit within an eight-month period.

**5. Courts §§ 11.1, 14— district courts — "judge shopping" — chief judge — administrative duties**

Legislative anticipation of the procedural quagmires and "judge shop-

ping" that could result from multi-judge districts was presumably a factor prompting the enactment of G.S. 7A-146, which vests in the chief district judge the administrative supervision and authority over the operation of the courts of the district.

**6. Divorce and Alimony § 22—— child custody — blood grouping test — welfare of children**

Under the particular facts in a wife's proceeding for child custody and for alimony, the father's motion for a blood grouping test of the parties and the children would be properly denied on grounds of public policy and the welfare of the children, notwithstanding the broad language of G.S. 8-50.1 allowing such test, where the husband admitted in his pleadings that he was married to the plaintiff in 1959 and lived with her until November 1968, during which marriage a daughter was born in 1962 and a son in 1964.

APPEAL by defendant from *Alexander, District Judge,* at the 1 August 1969 Session of FORSYTH District Court.

On 11 November 1968 plaintiff instituted this action for custody of two minor children of the parties, temporary and permanent support for herself and her children, and counsel fees. Paragraph II of the complaint alleges:

"II. That the parties hereto are husband and wife having been lawfully married to each other in Stokes County, North Carolina, on the third day of April, 1959; that there have been two children born to the aforesaid marriage, namely: Dana Renee Johnson, age six, who was born January 29, 1962 and Joseph Charles Johnson, age three, who was born December 18, 1964; . . ."

Defendant filed answer and admitted this paragraph of the complaint. Defendant also filed a counterclaim seeking custody of the two children who he alleged were born of his marriage to the plaintiff. In Paragraph VIII of the defendant's further answer and counterclaim he alleged "[t]hat the plaintiff is not a fit and proper person to have the care and custody of the aforesaid minor children of the plaintiff and defendant." Nothing in the record indicates that the parties separated prior to November of 1968.

On 6 December 1968 the cause was heard by Billings, District Judge. The court found as a fact that the parties were lawfully married on 3 April 1959 and that two children were born to said parties, Dana Renee Johnson on 21 January 1962 and Joseph Charles Johnson on 18 December 1964. Plaintiff was awarded temporary custody of the children pending an investigation and report on both of the parties by the "Juvenile Division of the District Court." Defendant

was ordered to pay plaintiff $125.00 per month for the use and bene-
fit of the children and to pay plaintiff's attorney $150.00.

On 29 May 1969 the cause was heard before Clifford, District
Judge, for the purpose of determining permanent custody, the amount
to be paid for the support of the children, and whether defendant
should be adjudged in contempt for failure to comply with the
order of 6 December 1968. Judge Clifford found plaintiff to be a fit
and proper person to have the permanent custody of the minor
children and made no substantial change in the custody order entered
6 December 1968. Defendant was also found to be in contempt for
failure to comply with Judge Billings' order of 6 December 1968 and
was ordered to comply by noon of the next day or be confined for
thirty (30) days.

On 2 July 1969 defendant filed a written motion for a blood
grouping test. On the same day Henderson, District Judge, signed
an order requiring the parties and the children to submit to the test.

By order dated 1 August 1969 Alexander, District Judge, "OR-
DERED, ADJUDGED AND DECREED that the aforesaid order
of July 2, 1969 ordering a blood grouping test be and the same is
hereby vacated." In this order Judge Alexander found as a fact:

> "That during the pendency of the hearing of plaintiff's mo-
> tion for alimony and custody, a motion was made by the de-
> fendant requesting a blood grouping test pursuant to the pro-
> visions of N.C. General Statute 8-50.1 which motion was denied
> by the Honorable Rhoda B. Billings, Judge of the District
> Court; that neither said motion nor order denying same was
> filed in the records of this case, the only reference in the court
> records to same being a letter from the defendant to Judge
> Billings stating that by reason of her denial of the blood group-
> ing test he did not intend to make any further payments pur-
> suant to a temporary order signed by Judge Billings on Decem-
> ber 6, 1968."

To the entry of this order the defendant excepts and appeals.

*Wood and Phillips by George F. Phillips for plaintiff appellee.*

*Robert M. Bryant for defendant appellant.*

VAUGHN, J.

**[1]**     The defendant admitted in his answer and affirmatively al-
leged in his counterclaim that the children were born of his marriage

to the plaintiff. Where a material fact is alleged in the complaint and admitted in the answer, it will, for the purpose of the trial, be taken as true and beyond the range of questioning. *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767; *Royster v. Hancock,* 235 N.C. 110, 69 S.E. 2d 29. It has the same effect for the plaintiff as if found by the jury. 2 McIntosh, N.C. Practice 2d, § 1235. Evidence to controvert the facts so admitted is properly excluded. *Fleming v. R. R.,* 160 N.C. 196, 76 S.E. 212. There was no issue of paternity before the court, and defendant's motion for a blood test was properly denied by Judge Billings. Included in Judge Billings' Findings of Fact in her order of 6 December 1968 is the following:

> "That the parties hereto are husband and wife having been lawfully married to each other in Stokes County, North Carolina on the 3rd day of April, 1959; that there have been born to said parties two children, namely: Dana Renee Johnson, age six, who was born January 21, 1962, and Joseph Charles Johnson, age three, who was born December 18, 1964; . . ."

**[2, 3]**    The defendant did not appeal from this order. It became, therefore, the law of the case, and other district judges were without authority to enter orders to the contrary. It is well established that no appeal lies from one superior court judge to another and that ordinarily one superior court judge may not modify, overrule or change the judgment of another superior court judge previously made in the same action. 2 Strong, N.C. Index 2d, Courts, § 9. Identical reasons proscribe appeals from one district judge to another. Appeals in civil cases must be from the district court to the Appellate Division of the General Court of Justice. If justice is to be administered in an orderly fashion in the district court division, these fundamentals must be observed.

**[4, 5]**    We note with some concern that within the span of less than eight months this case has been before four of the five district judges in the Twenty-First District which includes only one county. In addition to observing the restrictions on the authority of one district judge to reverse the orders of another, whenever reasonably possible, judicial discretion should be exercised to avoid having several judges hear separate fragments of the same lawsuit. This is particularly important in domestic cases involving the welfare of infants. "Justice to all parties is best served when one judge is able to see the controversy whole." *In Re Custody of King,* 3 N.C. App. 466, 165 S.E. 2d 60. Presumably legislative anticipation of the procedural quagmires and "judge shopping" that could result from multi-judge districts (as are all our district court districts) was a factor prompt-

ing the enactment of G.S. 7A-146. This section vests administrative supervision and authority over the operation of the district courts in the chief judge of the district. Subsection (2) of this section gives him the specific power and duty of "arranging or supervising the calendaring of matters for trial or hearing." Subsection (7) provides that he shall have the power and duty of "arranging sessions, to the extent practicable for the trial of specialized cases, including . . . domestic relations . . . and assigning district judges to preside . . . so as to permit maximum practicable specialization by individual judges; . . ."

**[6]**  We do not reach, nor do we imply, an affirmative answer to the question of whether this defendant's motion for a blood grouping test could have been allowed even if defendant had, by answer, denied paternity. In the light of the facts of this case, in which the defendant was married to plaintiff in 1959 and lived with her until November 1968, seven years after the birth of their daughter and four years following the birth of their son, common sense, public policy and overriding consideration for the welfare of innocent children would seem to dictate the contrary, despite the broad language of G.S. 8-50.1.

Although, as set out herein, some of the procedures followed to obtain them are disapproved, the results reached in the order appealed from are

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.