IN THE MATTER OF: D.D.
No. COA06-1411
North Carolina Court of Appeals
Filed April 17, 2007
This case not for publication
Kathleen Arundell Widelski, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services Division.
Jeannie Brown for appellee Guardian ad Litem.
Thomas B. Kakassy for respondent-appellant mother.
Richard E. Jester for respondent-appellant father.
HUNTER, Judge.
Respondent-mother and respondent-father appeal from a permanency planning order which ceased reunification efforts and placed their minor child, D.D., in the guardianship of her maternal grandmother.
Mecklenburg County Department of Social Services, Youth and Family Services Division ("YFS") filed a juvenile petition and obtained non-secure custody of newborn D.D. in April 2005, upon a finding by the court that D.D. was "exposed to a substantial risk of physical injury or sexual abuse" in the parents' custody. The petition alleged that YFS had been granted custody of respondent-mother's three older children in juvenile cases 2004 J 465-67, based on their exposure in her home to substance abuse and "inappropriate caretakers[,]" including respondent-father. The petition further alleged that respondent-father was a registered sex offender, was living with respondent-mother, and had "made drugs in her home" in the presence of respondent-mother's children.
After a hearing held in July of 2005, the district court adjudicated D.D. a neglected and dependent juvenile. The court took notice of its 12 July 2004 adjudicatory and dispositional order entered against respondent-mother in 2004 J 465-67, which found that respondent-father posed a risk to respondent-mother's children and ordered respondent-mother "to distance herself from individuals that would place her children at risk." The court found that respondent-mother allowed respondent-father "to cook drugs in her home" in the presence of D.D.'s siblings, and that one of the children had obtained an ecstacy pill that respondent-mother was holding for respondent-father. It found that respondent-father was a registered sex offender and spent seven and one-half years in prison after pleading guilty to a sex offense, but was "in total denial of his responsibility" for the crime. He "told YFS that he was into 'drugs not sex.'" Respondent-father also had pending criminal charges for drug possession, drug trafficking, and failure to register as a sex offender. The court found that respondent-mother was unable "to appreciate the dangers to her children if they are placed in this type of criminal environment" and saw no need to change her lifestyle in order to keep her children from harm. Moreover, although respondent-mother had reported ending her relationship with respondent-father, her parenting capacity evaluator found it "apparent" that their relationship was ongoing. The court found respondent-mother's claim not credible, noting that respondent-father continued to pay her bills and regularly visited her residence. The court noted respondent-mother's statement on 8 July 2005 that "'other people could not tell her who she can and cannot be with.'"
In a dispositional order entered 7 September 2005, the court ordered respondent-mother to comply with the case plan developed in 2004 J 465-67, and emphasized her need "to choose between her child and [respondent-father]." Respondent-father's case plan required him to complete a FIRST assessment and comply with its recommendations, obtain a parenting capacity evaluation, submit to random drug screens, obtain appropriate housing and employment, complete parenting classes and work with a parenting educator, maintain regular visits with the child, report his address to the North Carolina sex offender registry, obtain a sex offender evaluation and follow its recommendations. The court awarded supervised visitations to both parents and established a permanent plan of reunification.
Respondent-father obtained a FIRST assessment, but recommendations were postponed pending his sex offender assessment. He completed parenting classes. The psychologist who performed his sex offender assessment, Dr. William M. Tyson ("Dr. Tyson"), found that he had a "long history of substance abuse and dependence, violence, and sexual misconduct [resulting] in multiple criminal charges and multiple incarcerations." Dr. Tyson reported that respondent-father was dismissive of the assault charges, denied committing the sexual offense, and was unable "to grasp the meaning or intention of treatment" or "articulate a reasonable plan for care of his child." While noting that respondent-father "might benefit from treatment if he were to [ac]knowledge that there was a problem in his behavior or adaptation[,]" Dr. Tyson concluded that he was "best viewed as untreated for sex offending (as well as substance abuse, violence, and a general criminal orientation)."
Respondent-father's FIRST assessment was completed on 30 November 2005. It noted that he tested positive for and admitted to marijuana use. Respondent-father agreed to begin substance abuse treatment at McLeod by 2 December 2005, and to complete a mental health assessment at BHC-Randolph scheduled for 20 December 2005. Finally, he agreed to obtain domestic violence treatment at NOVA after completing substance abuse treatment.
In a review order entered 1 December 2005, the district court found that respondent-mother had completed parenting classes but continued to have contact with respondent-father, despite the termination of her parental rights as to D.D.'s three siblings. Respondent-father was attending parenting classes but lacked stable housing. Both parents were visiting the child. The court maintained D.D.'s placement with her maternal grandmother and ordered YFS to develop a case plan for respondent-mother. YFS filed a court summary on 17 February 2006, reporting D.D.'s satisfactory development in her placement with the maternal grandmother. The summary noted that respondent-father had yet to begin substance abuse treatment at McLeod, had been found by Dr. Tyson to be unsuited for sex offender treatment, had not obtained stable employment, and claimed to be living with his brother, who had a "very lengthy criminal history." At the time of its report, YFS had not received respondent-father's completed parental capacity evaluation. He had been to court in January and February of 2006 on charges of possession with intent to sell or deliver marijuana and cocaine, failure to register as a sex offender, and trafficking in cocaine. His bond was revoked on 19 January 2006.
The YFS court summary reported that respondent-mother had completed her FIRST and mental health assessments and parenting classes, and was receiving individual counseling. She had a negative drug screen and was determined not to be in need of services for substance abuse or domestic violence. She had a part-time job and was actively looking for full-time employment. However, the report noted that respondent-mother had not contributed any money to a savings account set up for D.D. She advised YFS that she lost her section 8 housing on 31 January 2006, and was living in a hotel while looking for additional section 8 housing. YFS further advised the court that respondent-mother "denies being with [respondent-father] but she was seen at the supervised visitation on two occasions with [him] since the last hearing." Attached to the summary were reports from social work assistant Tina Nichols, stating that respondent-father arrived with respondent-mother at visitations at Walton Plaza on 19 January 2006 and 2 February 2006. Respondent-mother waited in the car for respondent-father while he visited with D.D. On 2 February 2006, respondent-mother informed Nichols that she was moving from one residence to another and "made reference to [respondent-father] helping her out." Nichols reported receiving information on 8 February 2006 that respondent-mother was living with respondent-father in a hotel room. When asked about this allegation, she denied it. Citing respondents' "lack of consistency and honesty in this case" and D.D.'s ten-month foster placement "in a safe, protected environment with her maternal grandmother[,]" YFS recommended ceasing reunification efforts and changing the permanent placement plan to guardianship with the grandmother.
The district court held a permanency planning hearing on 3 March 2006. N.C. Gen. Stat. § 7B-907 (2005). Although the parties did not introduce testimony at the hearing, the court heard arguments from counsel and the guardian ad litem and "received into evidence and considered" the "YFS Court Summary dated March 3, 2006, all attachments, reasonable efforts reports, FIRST report and [the] Parenting Capacity Evaluation for [respondent-father.]" The court also questioned D.D.'s maternal grandmother about her understanding of and the willingness to assume the responsibilities of guardianship. Based on the information provided at the hearing, the court entered an order relieving YFS of further efforts to reunify D.D. with respondent-parents and awarding guardianship of the child to her maternal grandmother. Both respondents appealed from the order.
As an initial matter, we note YFS's inclusion of an "Assignment of Error by Appellee" in the record on appeal and its brief to this Court. Although N.C.R. App. P. 10(d) allows an appellee to cross-assign error, we find YFS's purported assignment of error unrelated to the 3 April 2006 permanency planning review order that is the subject of the instant appeal. Instead, YFS seeks to challenge a subsequent 25 August 2006 order denying its motion to dismiss respondent-mother's appeal. YFS did not appeal from  or otherwise seek appellate review of  the 25 August 2006 order. Accordingly, neither this order nor YFS's assignment of error is not properly before this Court. Inasmuch as the record does not reflect proper service of the 3 April 2006 permanency planning review order upon respondent-mother in accordance with N.C.R. Civ. P. 58, her notice of appeal is not untimely on its face such as to deprive this Court of jurisdiction. See N.C. Gen. Stat. § 7B-1001(c) (2005).
Before we address respondents' arguments, we note the following general principles that guide our review of the district court's order. A trial court's findings of fact are binding on appeal if they are supported by any competent evidence. In re H.W., 163 N.C. App. 438, 443, 594 S.E.2d 211, 213, disc. review denied, 358 N.C. 543, 599 S.E.2d 46 (2004). A finding that is not the subject of a properly briefed assignment of error is also binding. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991); see also N.C.R. App. P. 10(a) and N.C.R. App. P. 28(b)(6). A trial court's conclusions of law are reviewed de novo. In re J.J., J.J., J.J., ___ N.C. App. ___, ___, 637 S.E.2d 258, 260 (2006). Accordingly, our task in reviewing a permanency planning order is to determine whether the district court's contested findings of fact are supported by competent evidence, and whether any disputed conclusions of law are supported by its findings of fact. See In re Weiler, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003).

Respondent-Mother's Appeal
Respondent-mother first challenges the permanency planning order's Finding of Fact 1, which reads as follows:
On July 8, 2005, the juvenile was adjudicated neglected and dependent as to the mother.
. . .
The adjudicatory hearing began on July 1, 2005 and concluded on July 8, 2005. At the adjudication, the Court found that it was apparent that the mother was still involved with [respondent-father]. As of July 8, 2005, the mother testified that she broke off her relationship with [him] two-three months before the child was born. The Court did not find [her] testimony credible. The mother still loves [respondent-father]. As of July 8, 2005, the mother indicated that "other people could not tell her who she can and cannot be with". . . .
Further, at the adjudicatory hearing the Court found that the father is in total denial of his responsibility surrounding the sex offense and drug charges. The mother is not able to appreciate the dangers to her children if they are placed in this type of criminal environment. . . . The mother minimizes and shifts blame to others relating to her actions.
Respondent-mother characterizes the court's finding as "not a finding of fact, but a recitation of evidence previously found at a previous hearing." She notes that the court heard no testimony at the permanency planning hearing, and that the written materials submitted to the court contained only "conclusory sentences about [her] living situation and her relationship with the father." She contends that the court erred by basing its findings on "bootstrapped hearsay" from the July 2005 adjudicatory hearing. She further avers that D.D. had never been shown to be a neglected juvenile within the definition of N.C. Gen. Stat. § 7B-101(15) (2005).
We find no merit to this claim. The district court was free to take judicial notice of both prior proceedings and prior orders entered in this cause. See, e.g, In re M.N.C., 176 N.C. App. 114, 120, 625 S.E.2d 627, 632 (2006) (quoting In re Isenhour, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991)); In re S.N.H. & L.J.H., ___ N.C. App. ___, ___, 627 S.E.2d 510, 515 (2006) (citing In re J.B., 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005)); In re Ivey, 156 N.C. App. 398, 402, 576 S.E.2d 386, 390 (2003). The court's Finding of Fact 1 recounts of the evidence and findings which led to its adjudication of neglect and dependency on 23 August 2005. We find nothing improper in such a summary, which provides a context for the court's additional findings and conclusions. Therefore, we overrule this assignment of error.
To the extent respondent-mother seeks review of the adjudication of neglect entered on 23 August 2005, her claim is not properly before this Court. She did not appeal from the adjudication of dependency and neglect following the court's entry of its dispositional order on 7 September 2005. See N.C. Gen. Stat. § 7B-1001(a)(3). The adjudication is thus res judicata and cannot be revisited here. See Kelly v. Kelly, 167 N.C. App. 437, 443, 606 S.E.2d 364, 369 (2004) (quoting Johnson v. Johnson, 7 N.C. App. 310, 313, 172 S.E.2d 264, 266 (1970)). The district court was not required to make a second finding of neglect in ceasing reunification efforts under N.C. Gen. Stat. § 7B-507(b) (2005). Furthermore, respondent-mother's claim is not supported by her assignment of error, which raises only the evidentiary support for Finding of Fact 1 in the permanency planning order. See N.C.R. App. P. 10(a).
Respondent-mother next assigns error to Finding of Fact 4, on the ground that it is actually a conclusion of law "and is not supported by properly found facts." Finding of Fact 4 reads, in pertinent part, as follows:
4. It is not possible for the juvenile to be returned home immediately or within 6 months nor is it in the [j]uvenile's best interest to return home because: The father has been convicted of 2nd degree sex offense. . . . Dr. Tyson found that the father can only be considered into a sex offender recovery program if he seemed committed. The father was not admitted to the program. . . . The father appeared in criminal court in February 2006 on charges of failure to register as a sex offender, trafficking cocaine, and possession with intent to sell/distribute marijuana. The mother does not have stable housing. The mother has not contributed any money to a savings account for D[.D.] as required in the Family Services Agreement. The mother has been seen on at least two occasions with the father since the last hearing.
In challenging this finding, respondent-mother asserts that she has never been alleged or shown to have injured D.D., has substantially complied with her case plan, and has denied an ongoing relationship with respondent-father. Citing our decision in In re D.L., A.L., 166 N.C. App. 574, 583, 603 S.E.2d 376, 382 (2004), respondent mother contends that DSS "should have presented live evidence to justify its life-changing request" to cease reunification efforts.
The procedures for a permanency planning hearing are set forth in N.C. Gen. Stat. § 7B-907. Where the district court elects to maintain the child in a placement outside of the parent's home, the statute requires the court to "consider" and "make written findings" on several criteria, including the following: "(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home[.]" N.C. Gen. Stat. § 7B-907(b)(1); see also In re Harton, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) ("[s]ection 7B-907(b) requires a trial court to make written findings on all of the relevant criteria as provided in the statute"). The court's fact-finding must be sufficient to demonstrate the "'processes of logical reasoning'" by which the individual evidentiary facts led the court to "' find the ultimate facts essential to support the conclusions of law.'" In re J.S., 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (quoting In re Harton, 156 N.C. App. at 660, 577 S.E.2d at 337). The court may not delegate its fact-finding responsibilities by simply incorporating a DSS court summary into its order. In re D.L., A.L., 166 N.C. App. at 582, 603 S.E.2d at 382 (quoting In re Harton, 156 N.C. App. at 660, 577 S.E.2d at 337). Likewise, we have held that the department's court summary, standing alone, "is insufficient to constitute competent evidence to support the trial court's findings of facts" at a permanency planning proceeding. Id. at 583, 603 S.E.2d at 382.
Here, the district court's Finding of Fact 4 begins by tracking the language of N.C. Gen. Stat. § 7B-907(b)(1) and thus clearly represents the district court's assessment of this statutory factor. A determination under N.C. Gen. Stat. § 7B-907(b)(1), that "[i]t is not possible for the juvenile to be returned home . . . within 6 months nor is it in the [j]uvenile's best interest to return home" is in the nature of a legal conclusion, reached through the application of judgment to the objective facts and circumstances. See In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) ("best interest determinations are conclusions of law because they require the exercise of judgment"); see also In re M.N.C., 176 N.C. App. at 122, 625 S.E.2d at 632 (citation omitted) ("`if a finding of fact is essentially a conclusion of law it will be treated as a conclusion of law which is reviewable on appeal'"). Rather than a pure conclusion of law, however, the paragraph denominated Finding of Fact 4 includes both a conclusion of law and multiple specific findings of fact in support of this conclusion. To the extent respondent-mother assigns error to the court's findings on evidentiary grounds, we find no merit to her claim. As noted above, findings of fact that are supported by any competent evidence are binding on appeal. In re H.W., 163 N.C. App. at 443, 594 S.E.2d at 213. At a permanency planning hearing, competent evidence may include "any evidence, including hearsay . . . , that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-907(b). Moreover, consistent with N.C. Gen. Stat. § 7B-901 (2005), "[t]he written reports of social workers and psychiatrists, and other written material in the court's file are competent evidence in a dispositional or review hearing in juvenile cases." In re Shue, 63 N.C. App. 76, 79, 303 S.E.2d 636, 638 (1983), affirmed as modified by, 311 N.C. 586, 319 S.E.2d 567 (1984). While we have held that the YSF court summary cannot be the sole evidentiary basis for the court's findings, see In re D.L., 166 N.C. App. at 582, 603 S.E.2d at 382 (quoting In re Harton, 156 N.C. App. at 660, 577 S.E.2d at 337), the court did not rely exclusively on the summary here. Most of the particularized findings in Finding of Fact 4 concern respondent-father's criminal activities, lack of stable employment and housing, and status as an untreated sex offender. These findings find support in respondent-father's sex offender assessment and parenting capacity evaluation, as well as administrative records from the Administrative Office of the Courts. The finding that respondent-mother was seen on "at least two occasions with the father since the last hearing" was supported by the written reports of social work assistant Nichols, who observed respondent-father's visitations with D.D. on 19 January 2006 and 2 February 2006. Nichols' notes further describe an exchange with respondent-mother on 2 February 2006, during which she acknowledged that respondent-father was helping her move. Moreover, respondent-mother's counsel conceded that she had made no contribution to D.D.'s savings account and was "in between housing" at the time of the hearing.
We further find the court's particularized findings sufficient to support its ultimate finding and conclusion under N.C. Gen. Stat. § 7B-507(b)(1) that returning D.D. to respondent-mother's home within the next six months was not possible and was contrary to the best interests of the child. See generally In re L.B., ___ N.C. App. ___, ___ S.E.2d ___ (No. 06-483 filed 2 January 2007) (addressing sufficiency of findings under N.C. Gen. Stat. § 7B-907(b)); In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). Specifically, the court noted respondent-mother's failure to obtain stable housing or to discontinue her relationship with respondent-father, as previously ordered and required by her case plan. The court's findings further reflect respondent-father's failure to address the issues which were found to place respondent-mother's children at a significant risk of harm. Accordingly, we overrule this assignment of error.
In her next assignment of error, respondent mother claims as follows: "The trial court erred in its Order that the permanent plan for the child D.D. change to guardianship and in grantingguardianship to the maternal grandmother, T[.H.], in that the order is contrary to the law and the facts." (Emphasis added.) The vague and all-compassing assertion that a particular ruling "is contrary to the law and the facts" does not comply with N.C.R. App. P. 10(c)(1), which requires that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." Id. See Wetchin v. Ocean Side Corp., 167 N.C. App. 756, 759, 606 S.E.2d 407, 409 (2005) (quoting State v. Kirby, 276 N.C. 123, 131, 171 S.E.2d 416, 422 (1970)) ("'[ t]his assignment  like a hoopskirt  covers everything and touches nothing'").
Because respondent-mother's assignment of error fails to identify the issue to be argued on appeal, it is subject to dismissal. See Calhoun v. WHA Med. Clinic, PLLC, ___ N.C. App. ___, ___, 632 S.E.2d 563, 574 (2006); May v. Down E. Homes of Beulaville, Inc., 175 N.C. App. 416, 418, 623 S.E.2d 345, 346 (2006) (citation omitted) (finding the appellant's "'broad, vague, and unspecific'" assignments of error insufficient to preserve any issue for appeal); Walker v. Walker, 174 N.C. App. 778, 782-83, 624 S.E.2d 639, 642 (2005) (dismissing assignments of error claiming that each finding or conclusion was "'erroneous as a matter of law'"), disc. review denied, 360 N.C. 491, 632 S.E.2d 774 (2006). Moreover, "once this Court determines that an appeal is flawed for failure to comply with Rule 10(c)(1), this Court is not free to address an issue not raised or argued by the appellant: 'It is not the role of the appellate courts . . . to create an appeal for an appellant.'" In re A.E., J.E., 171 N.C. App. 675, 680, 615 S.E.2d 53, 57 (2005) (quoting Viar v. N.C. Dep't of Transp., 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005)).
In her briefed argument in support of this assignment of error, respondent-mother claims the court failed to make sufficient findings under N.C. Gen. Stat. § 7B-907(b)(1) to demonstrate "why it is not in [D.D.]'s best interest to return home" within the next six months. She notes that most of the court's written findings addressed respondent-father's activities. She also reiterates that the court heard no live testimony at the hearing. As for the court's findings that she lacked stable housing and had been seen twice with respondent-father since the last review hearing, respondent-mother avers that they were based on unreliable hearsay contained in the YFS court summary. She deems "irrelevant" the finding that she failed to contribute to D.D.'s savings account. We note, however, that payment of child support was a component of respondent-mother's YFS case plan.
In addition to the facts included in Finding of Fact 4, the court made the following evidentiary findings germane to the factor set forth in N.C. Gen. Stat. § 7B-907(b)(1):
The father has been convicted of 2nd degree sex offense. . . . Dr. Tyson found that the father can only be considered into a sex offender recovery program if he seemed committed. The father was not admitted to the program. . . . The father has not returned to McCleod to follow through with [substance abuse] treatment. The mother does not have stable housing [and] continues to be seen with [respondent-father].
. . .
The juvenile has been placed with her maternal grandmother since May 2005. . . .
. . .
The father continues to show recent criminal activity related to drug trafficking. The mother does not have a permanent residence. There is evidence that the mother and father continue in a relationship. The mother has stated in previous hearings before the Court that she will continue in a relationship with the child's father.
Respondent-mother offered no evidence of progress in obtaining stable housing or of disassociating herself from respondent-father. Moreover, the documents relied upon by the district court were competent evidence at a permanency planning hearing, see N.C. Gen. Stat. §§ 7B-901, -907(b), and were thus sufficient to support the individual evidentiary facts found by the court. In re Shue, 63 N.C. App. at 79, 303 S.E.2d at 638.
As explained above, we believe the court's particularized findings demonstrate why the court found it contrary to D.D.'s best interests to be returned home to respondent-mother within the next six months. In addition to her lack of stable housing and her failure to contribute to D.D.'s savings account as provided in her case plan, the court's findings reflect respondent-mother's ongoing refusal to eliminate the risk of harm to D.D. created by exposure to respondent-father. Despite the clear directive in the 7 September 2005 dispositional order that she choose between respondent-father and her child, respondent-mother had yet to correct the primary factor that led to D.D.'s adjudication of dependency and neglect on 23 August 2005, as well as the termination of her parental rights to D.D.'s three siblings in November of 2005. See In re L.B., ___ N.C. App. ___, ___ S.E.2d ___ (No. 06-483 filed 2 January, 2007); In re S.N., ___ N.C. App. ___, ___, 636 S.E.2d 316, 321 (2006) ("[t]he respondent father effectively chose S.N.'s mother over S.N.") (citing In re Huff, 140 N.C. App. 288, 299, 536 S.E.2d 838, 845 (2000)); cf In re E.N.S., 164 N.C. App. 146, 151, 595 S.E.2d 167, 170 (considering prior neglect of one child as evidence of the respondent's ongoing neglect of child's siblings), disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004).
To the extent respondent-mother raises the issue in her brief to this Court, we hold that the district court made sufficient findings under N.C. Gen. Stat. § 7B-907(c) to support its award of guardianship to the maternal grandmother as D.D.'s permanent plan of care. In addition to finding that D.D. had been placed with her grandmother since May of 2005, the court questioned the grandmother in open court at the hearing. Based on her responses, the court found that she understood and was willing to accept the responsibilities of guardianship, including the financial requirements of caring for the child. See N.C. Gen. Stat. § 7B-903(a)(2)(c) (2005) ("[i]f the court finds that [a] relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile"); see also N.C. Gen. Stat. § 7B-907(c). Finally, we note that the court made the findings required to cease reunification efforts under N.C. Gen. Stat. § 7B-507(b):
[E]fforts to reunite would be futile and would be inconsistent with the juvenile's health, safety, and need for a safe[,] permanent home within a reasonable period of time; and
[A] court of competent jurisdiction has terminated involuntarily the parental rights of the mother to her three children.
See N.C. Gen. Stat. § 7B-507(b)(1), (3). Accordingly, we overrule this assignment of error.
Because respondent-mother does not address the remaining joint assignments of error included in the record on appeal, she is deemed to have abandoned them pursuant to N.C.R. App. P. 28(b)(6).

Respondent-Father's Appeal
Respondent-father first claims that he was denied effective assistance of counsel by his court-appointed attorney. Specifically, he faults counsel for failing to object to the district court's lack of personal jurisdiction due to petitioner's failure to serve the juvenile petition and summons upon him.
"A parent has a right to counsel in termination of parental rights proceedings." In re J.A.A. & S.A.A., 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) h[is] counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing." Id. Service of process in a juvenile proceeding involving abuse, neglect, and dependency is governed by N.C.R. Civ. P. 4 and N.C. Gen. Stat. § 7B-406(a) (2005), which provides that "[i]mmediately after a petition has been filed alleging that a juvenile is abused, neglected, or dependent, the clerk shall issue a summons to the parent . . . requiring [him] to appear for a hearing at the time and place stated in the summons." We have previously held that "'"process must be issued and served in the manner prescribed by statute"'" in order for the court to obtain jurisdiction over a respondent. In re A.J.M., ___ N.C. App. ___, ___, 630 S.E.2d 33, 37 (2006) (citations omitted). "Nevertheless, a defendant who makes a general appearance without objection waives the issue of insufficiency of service of process and submits to the personal jurisdiction of the court." Id. (citing N.C. Gen. Stat. § 1-75.7 (2005)). "'[A]ny act which constitutes a general appearance obviates the necessity of service of summons and waives the right to challenge the court's exercise of personal jurisdiction over the party making the general appearance.'" In re A.B.D., 173 N.C. App. 77, 83, 617 S.E.2d 707, 712 (2005) (quoting Lynch v. Lynch, 302 N.C. 189, 197, 274 S.E.2d 212, 219 (1981)).
The record shows that a juvenile summons was issued upon respondent-father on 27 April 2005. The initial seven-day order entered by the district court on 3 May 2005 includes findings that respondent-father was present at the hearing, was personally served with the process on 3 May 2005, and "acknowledged paternity in open court." The findings that respondent-father was personally served with the summons in this cause on 3 May 2005 is also contained in the order adjudicating D.D. a neglected and dependent juvenile entered on 23 August 2005. Because respondent-father did not appeal from the dispositional order entered on 7 September 2005, see N.C. Gen. Stat. § 7B-1001(3), he is bound by the finding that he was personally served with process on 3 May 2005. Kelly, 167 N.C. App. at 443, 606 S.E.2d at 369. Having been properly served, he cannot fault his counsel for failing to object to the court's jurisdiction on this ground.
We further find no indication that counsel's failure to contest service of process upon respondent-father undermined the fairness of these proceedings. Respondent-father was present at the initial seven-day hearing held 3 May 2005, at which time counsel was appointed for him. Both respondent-father and counsel appeared at each subsequent hearing in this cause. We are unpersuaded by respondent-father's suggestion that an objection by counsel would have "generated more time for [him] to work on his alleged case plan" lacks any support in the record. Accordingly, we overrule this assignment of error.
In support of his second argument on appeal, respondent-father lists fourteen corresponding assignments of error. We will address each portion of his argument in the order presented in his appellant's brief.
Respondent-father claims generally that YFS's conduct in this cause and the procedures used by the district court violated "the constitutional requirements that he be given fundamentally fair processes." We note, however, that respondent-father failed to raise his constitutional claim at the permanency planning hearing. It is well-established that constitutional issues not raised in the trial court may not be raised on appeal. N.C.R. App. P. 10(b)(1); State v. Lloyd, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001); State v. Cummings, 352 N.C. 600, 613, 536 S.E.2d 36, 47 (2000).
Respondent-father also faults the district court for basing its findings of fact on documents that were not formally offered and received into evidence at the hearing. Although the court states in its order that it "received into evidence and considered" the "YFS Court Summary dated March 3, 2006, all attachments, reasonable effort reports, FIRST report and [the] Parenting Capacity Evaluation for [respondent-father,]" he avers that the hearing transcript contradicts the court's claim.
In In re Ivey, 156 N.C. App. at 402, 576 S.E.2d at 389-90, we held that the district court could rely upon reports submitted by DSS and the guardian ad litem as evidence at a permanency planning proceeding, even though the reports were not formally admitted into evidence at the hearing. Absent a claim "that DSS or the guardian ad litem failed to follow the Local Rules of Juvenile Court or failed to provide the documents to [respondents'] counsel[,]" the documents were competent evidence under N.C. Gen. Stat. §§ 7B-901 and -907(b). Id. at 403, 576 S.E.2d at 390; accord In re M.J.G., 168 N.C. App. 638, 648-49, 608 S.E.2d 813, 819 (2005).
Here, as in Ivey, the lack of a formal tender of documentary evidence by YFS did not bar the court from considering this evidence under N.C. Gen. Stat. § 7B-907(b). At the beginning of the permanency planning hearing, YFS's counsel advised the court as follows:
The Department has filed a court summary as well as a reasonable efforts report and there are attachments to those reports, Your Honor, including the [FIRST] report, McLeod report and I believe there are also notes from the social work assistant who has been observing visits with the child. Also I would add today the Department did receive a parenting capacity evaluation for the father[.] All the parties have been provided with a copy of that (inaudible) filed motion.
The guardian ad litem "concur[red] 100 percent" with YFS's recommendations to the court, endorsed its "excellent report" and acknowledged her receipt of respondent-father's parenting capacity evaluation. When asked by the court for his response, counsel for respondent-father opposed the recommendation of guardianship but did not object to the reports or claim a lack of notice or any violation of the local rules. Moreover, although respondent-father did not introduce any evidence to rebut the reports, the court did not prevent or discourage him from doing so. See In re Shue, 311 N.C. at 597, 319 S.E.2d at 574 (holding that "the trial court erred by not hearing all of the evidence which the mother was prepared to present to the court" at the review hearing). Finally, the court expressly announced its acceptance of the documents submitted by YFS. Accordingly, we find no merit to this claim. See In re M.J.G., 168 N.C. App. at 648-49, 608 S.E.2d at 819.
Following his initial objections to the procedures used by the district court, respondent-father challenges many of the individual findings as not "proved by clear and convincing evidence" at the hearing. Respondent-father also challenges certain of the court's findings on other grounds. Before considering these arguments in the order presented, we again note that "[a]ppellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." In re J.C.S., 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004) (quoting In re Eckard, 148 N.C. App. 541, 544, 559 S.E.2d 233, 235 (2002)). Notwithstanding respondent-father's urging of a clear and convincing evidence standard, "the trial court's findings of fact are conclusive on appeal if they are supported by any competent evidence[,]" even if there is evidence to the contrary. Id. at 105 n.3, 595 S.E.2d at 160 n.3 (citing In re Weiler, 158 N.C. App. at 477, 581 S.E.2d at 137)); In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397-98 (1996).
Respondent-father presents a single challenge to Findings of Fact 2, 3, and 4, casting them as "simply recitations" from the reports submitted by YFS, rather than independent judicial findings of fact. He repeats his assertion that the reports submitted to the court are not evidence.
In addition to explicitly incorporating the YFS court summary by reference, Findings of Fact 2 and 3 include the following specific findings related to respondent-father:
2. The following progress has been made towards alleviating or mitigating the problems that necessitated placement: . . . The father completed a FIRST Assessment and completed parenting classes. . . .
3. The following remains to be accomplished before reunification can be achieved: . . . The father has been convicted of 2nd degree sex offense. He had a sex-offender assessment in October 2005; however, Dr. Tyson found that the father can only be considered into a sex offender recovery program if he seemed committed. The father was not admitted to the program. The father does not have stable, full-time employment. The father lives with his brother who has a lengthy criminal history. The father appeared in criminal court in January 2006 on charges of Possession [with Intent to Sell/Distribute Cocaine and Marijuana. The father appeared in criminal court in February 2006 on][1] charges of failure to register as a sex offender, trafficking cocaine, and possession with intent to sell/distribute marijuana. The father has not returned to McCleod to follow through with treatment.
In Finding of Fact 4, the court repeats these facts from Finding of Fact 3 as support for its finding that "[i]t is not possible for the juvenile to be returned home immediately or within 6 months nor is it in [her] best interest to return home[.]"
As stated in our review of respondent-mother's appeal, the documentary evidence submitted to the court was competent evidence sufficient to support findings of fact at a permanency planning hearing. See In re M.J.G., 168 N.C. App. at 648-49, 608 S.E.2d at 819 (citing In re Ivey, 156 N.C. App. at 402, 576 S.E.2d at 389-90). The YFS court summary, AOC records, prior orders in this cause, and respondent-father's FIRST progress report, sex offender assessment, and parenting capacity evaluation support each of the facts found by the court in Findings of Fact 2-4. Moreover, the court's particularized evidentiary findings are sufficient to support its conclusion that return of D.D. to respondent-father's home within the next six months was neither possible nor in her best interest. Accordingly, we overrule his assignments of error related to Findings 2-4.
To the extent respondent-father denies committing the second degree sex offense and insists that his conviction for this offense has no affect on his ability to parent D.D., we note that his guilty plea was competent evidence that he committed the offense. See Camalier v. Jeffries, 113 N.C. App. 303, 312-13, 438 S.E.2d 427, 433 (1994) (citing Boone v. Fuller, 30 N.C. App. 107, 109, 226 S.E.2d 191, 193 (1976)). Respondent-father's unwillingness to acknowledge his responsibility for the crime was found by Dr. Tyson to preclude necessary sex offender treatment, as noted in the court's findings. Moreover, Dr. Stephen C. Strzelecki ("Dr. Strzelecki") found in respondent-father's parenting capacity evaluation that his "illegal activity and poor judgement" were "significant obstacles to his being an effective parent" and were consistent with his proclivity for "not taking responsibility and being accountable for his own actions."
Respondent-father asserts that the evidence did not support the portion of Finding of Fact 5 that "the juvenile's return home is unlikely within 6 months[.]" He describes his progress with the case plan as "consistent and ongoing" and suggests that Dr. Strzelecki found him "preparing rapidly" to become an effective parent to D.D.
We find no merit to this claim. As noted above, Finding of Fact 4 included the court's conclusion that it was not possible for D.D. to be returned home within six months under N.C. Gen. Stat. § 7B-507(b)(1). This finding was supported, inter alia, by evidence of respondent-father's involvement in criminal activity, his inappropriate living arrangement, lack of stable employment, unwillingness to submit to sexual offender treatment, and failure to begin substance abuse treatment, and other components of his FIRST program. Respondent-father's parenting capacity evaluation included Dr. Strzelecki's findings that the substantial changes needed for him to care for D.D. would be "very difficult" and would "require[] significant motivation by an individual given a life-long pattern of inappropriate behaviors and actions[.]" While respondent-father appeared "cooperative in completing tasks required by [YFS]," Dr. Strzelecki agreed with Dr. Tyson that he displayed no "desire for true behavior change" and no "concern[] about the possible consequences of his involvement in the legal system on his life, let alone the lives of his children."
In Finding of Fact 5, the court addressed the factor set forth in N.C. Gen. Stat. § 7B-907(b)(2), "[w]here the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established[.]" The court found that guardianship with D.D.'s maternal grandmother should be established, inasmuch as it was not possible to return the child to her parents, and the child had been placed with her maternal grandmother since May of 2005. The record reflects D.D.'s development as a happy and healthy baby while in the care of her grandmother, who is a licensed foster care provider. Notwithstanding respondent-father's completion of parenting classes and a parenting capacity evaluation, the court's finding was consistent with the evidence that respondent-father was not a realistic placement option for the foreseeable future. We note the court's additional finding under N.C. Gen. Stat. § 7B-907(b)(2), that respondent-father should retain visitation rights, and its award of weekly supervised visitations based thereon.
Respondent-father next challenges the court's Finding of Fact 6, that "there are no barriers to adoption." While it appears the court entered this finding for the purpose of addressing all of the permanency planning criteria set forth in N.C. Gen. Stat. § 7B-907(b), we agree with respondent-father that the criterion of N.C. Gen. Stat. § 7B-907(b)(3) is not strictly pertinent to a placement plan that preserves both respondents' parental rights and awards guardianship to a relative. However, because this finding had no impact on the court's disposition, its inclusion in the order is harmless. Cf. In re L.B., ___ N.C. App. ___, ___, 639 S.E.2d 23, 33 (2007) ("absent this finding, there remained sufficient evidence . . . to support the trial court's ultimate determination"). We note that respondent-father did not assign error to Finding of Fact 6 in the record on appeal. Respondent-father claims that Reasonable Efforts Reports submitted by YFS contradict the court's finding under N.C. Gen. Stat. § 9B-507(b)(5), that YFS made reasonable efforts toward reunification. Respondent-father itemizes the reports' entries from 26 April 2005 to 16 February 2006, characterizing many of the actions taken by YFS as "ministerial," "not a reasonable effort to reunify[,]" or only "part of a reasonable effort." Based on his classifications, he avers that "the efforts to reunify are simply not sufficient to support the finding that YFS made sufficient reasonable efforts" toward this goal. Respondent-father cites no authority to support his argument, as required by N.C.R. App. P. 28(b)(6).
The determination that DSS has made reasonable efforts to prevent placement of children out of their parents' home is a conclusion of law subject to de novo review. In re Helms, 127 N.C. App. at 510-11, 491 S.E.2d at 675-76. The Juvenile Code defines reasonable efforts as follows:
The diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.
N.C. Gen. Stat. § 7B-101(18). We believe that the acts detailed in the Reasonable Efforts Reports constitute reasonable efforts toward the goal of reunification established in the court's 7 September 2005 dispositional order. YFS developed a case plan with respondent-father and monitored his progress with the plan. It facilitated his parenting classes through the Family Center, arranged and paid for his FIRST evaluation, arranged his parenting capacity evaluation with Dr. Tyson, discussed the results of the evaluations with Drs. Tyson and Strzelecki, reviewed the evaluations with respondent-father, attempted to arrange his appointments at McLeod and BHC, and scheduled and supervised his visitations with D.D. The services provided to respondent-father support the court's conclusion that YFS made reasonable efforts toward reunification. See In re Rholetter, 162 N.C. App. 653, 662, 592 S.E.2d 237, 243 (2004); see also In re L.B., ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (No. 06-483 filed 2 January 2007) (concluding that the court's findings were sufficient to show reasonable efforts toward reunification under N.C. Gen. Stat. § 7B-907(b)(5)).
Regarding Finding of Fact 9, respondent-father questions the relevance of the court's finding that D.D. had been in YFS custody since April of 2005. Under N.C. Gen. Stat. § 7B-907(d), however, the fact that D.D. had been in a placement outside of the home for the preceding twelve months required the director of the department of social services to initiate termination of parental rights proceedings, unless the court found one of three circumstances prescribed by N.C. Gen. Stat. § 7B-907(d)(1)-(3). Under N.C. Gen. Stat. § 7B-907(d)(1), a finding that "[t]he permanent plan for the juvenile is guardianship or custody with a relative" relieves the director of this statutory obligation to begin termination proceedings. Id. Here, the court found, "[t]he permanent plan for the juvenile is currently reunification. The plan should be changed to guardianship." Although respondent-father observes that an award of guardianship is "a conclusion or a degree" rather than a finding of fact, we interpret Finding of Fact 9 as simply the court's acknowledgment of the effect of D.D.'s year-long placement outside the home under N.C. Gen. Stat. § 7B-907(d), and its formal entry of the necessary finding to preempt termination proceedings under this subsection.
Respondent-father next challenges the court's finding in Finding of Fact 10 that additional efforts toward reunification "would be futile and would be inconsistent with the juvenile's health, safety, and need for a safe permanent home within a reasonable period of time[.]" He insists that his "progress just before the hearing was more than sufficient" to warrant further efforts by YFS. As elsewhere in his brief, he offers no further argument and no citation to authority in support of this assertion. See N.C.R. App. P. 28(b)(6).
Under N.C. Gen. Stat. § 7B-507(b)(1), the district court may order the department of social services to cease reunification efforts upon a finding that "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" Id. Such a "finding" is in the nature of a conclusion of law, insofar as it requires the application of the court's judgment to facts and circumstances of a case. See In re Helms, 127 N.C. App. at 510-11, 491 S.E.2d at 675-76; see also In re Faircloth, 153 N.C. App. 565, 569, 571 S.E.2d 65, 68 (2002) (finding the mislabeling of findings and conclusions by the trial court to be immaterial). However classified, the court's finding and conclusion satisfies the requirement of N.C. Gen. Stat. § 7B-507(b), and is supported by findings of respondent-father's ongoing involvement in criminal activity, his lack of appropriate housing or employment, his unwillingness to accept responsibility for his prior sex offense as required to receive treatment, and his failure to begin the substance abuse and other treatment to which he agreed in his FIRST report. Cf. In re M.J.G., 168 N.C. App. at 649-50, 608 S.E.2d at 819-20 (finding compliance with N.C. Gen. Stat. § 7B-507(b)).
Respondent-father characterizes Finding of Fact 11 as a conclusion of law unsupported by the court's other findings or by the evidence. The finding states as follows: "At this time, the juvenile's return to her home is contrary to her best interest." In our review of Finding of Fact 4, we upheld the court's finding that it was not in D.D.'s best interest to return home within the six months. Finding of Fact 11 is merely a partial reiteration of Finding of Fact 4, speaking to the undesirability of returning D.D. to respondents' custody "[a]t this time[.]" Given respondent-father's admission that it "was not possible" for him to assume custody of D.D. at the time of hearing, we likewise find no error here.
Respondent-father assigns error to Finding of Fact 14, in which the court noted its colloquy with D.D.'s maternal grandmother and found that she "expressed her understanding and willingness to accept the responsibility of providing for the child's care and needs as well as the financial responsibility she shall incur in providing for this care." He contends that this finding was "not necessary[,]" inasmuch as the court should have given him "at least another few months" to show progress on his case plan before it changed the permanency plan to guardianship. Notwithstanding his position that the court erred by changing the permanent plan to guardianship, respondent-father offers no cognizable grounds to disturb this individual finding on appeal. Moreover, the finding that a prospective guardian understands and has the resources to assume the responsibilities of guardianship is required by N.C. Gen. Stat. § 7B-907(f).
Respondent-father also contests the assorted "Other findings" contained in Finding of Fact 15. In addition to incorporating by reference the several documents submitted by YFS, the court found that the documents provided "sufficient evidence to determine the best interests of [D.D.]" Finding of Fact 15 also includes the finding that respondent-father "continues to show recent criminal activity related to drug trafficking." To the extent respondent-father repeats his assertion that the documentary materials submitted by YFS were not formally tendered into evidence at the hearing, we find no merit to this argument. See In re M.J.G., 168 N.C. App. at 648-49, 608 S.E.2d at 819 (citing In re Ivey, 156 N.C. App. at 402, 576 S.E.2d at 389-90). As for the claim that the court improperly delegated its duty as finder of fact by incorporating the documents into its order by reference, we hold that the court made sufficient particularized findings of fact to comply with N.C. Gen. Stat. § 7B-907(b). See In re L.B., ___ N.C. App. ___, ___ S.E.2d ___ (No. 06-483 filed 2 January 2007).
Lastly, respondent-father asserts without discussion that the entirety of the order's conclusions of law and decretal provisions "must fail" due to the invalidity of the underlying findings of fact. As discussed above, we hold that the court's findings were supported by competent evidence and were sufficient (1) to reflect its consideration of the relevant permanency planning criteria under N.C. Gen. Stat. § 7B-907(b)-(c), (2) to support its decision to cease reunification efforts under N.C. Gen. Stat. § 7B-507(b), and (3) to support its placement of D.D. in the guardianship of her maternal grandmother as the "best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time" under N.C. Gen. Stat. § 7B-907(c). Accordingly, we affirm the court's order.
Affirmed.
Judge McCULLOUGH concurs.
Judge TYSON concurs in the result only in a separate opinion.
TYSON, Judge, concurring in the result only.
I disagree with the analysis and conclusions of the majority's opinion. See In re A.P., ___ N.C. App. ___, 634 S.E.2d 561 (2006); In re D.L., A.L., 166 N.C. App. 574, 603 S.E.2d 376 (2004). I concur in the result to affirm the trial court's order.
Competent evidence supports the trial court's finding of fact numbered 4, which states:
It is not possible for the juvenile to be returned home immediately or within 6 months nor is it in the Juvenile's best interest to return home because: The father has been convicted of 2nd degree sex offense. He had a sex-offender assessment in October 2005; however, Dr. Tyson found that the father can only be considered into a sex offender recovery program if he seemed committed. The father was not admitted to the program. The father does not have stable full-time employment. The father lives with his brother who has a lengthy criminal history. The father appeared in criminal court in January 2006 on charges of Possession with Intent to Sell/Distribute Cocaine and Marijuana. The father appeared in criminal court in February 2006 on charges of failure to register as a sex offender, trafficking cocaine, and possession with intent to sell/distribute marijuana. The mother does not have stable housing. The mother has not contributed any money to a savings account for [the juvenile] as required in the Family Services Agreement. The mother has been seen on at least two occasions with the father since the last hearing. The trial court based this finding of fact upon a review of: (1) the YFS court summary; (2) AOC records; (3) prior orders in this cause; (4) the FIRST progress report; (5) the sex offender assessment; and (6) the parenting capacity evaluation report. Social Work Assistant Nichols's written reports show contact between respondent father and respondent mother occurred on 19 January 2006 and 2 February 2006.
Under N.C. Gen. Stat. § 7B-907(b) (2005):
At any permanency planning review, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition. At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home[.]
Respondent mother also admits she failed to contribute to D.D.'s savings account and was "in between housing" which is competent to support the trial court's finding of fact. For these reasons, I vote to affirm the trial court's order and concur in the result only.
NOTES
[1] This portion of the photocopy provided by appellants in the record on appeal is illegible. Because the court appears to have made identical findings in its Finding of Fact 4, we have adopted the language used by the court in its subsequent finding.