**IN RE M.N.C.**

[176 N.C. App. 114 (2006)]

IN THE MATTER OF: M.N.C.

No. COA05-829

(Filed 21 February 2006)

## 1. Termination of Parental Rights— findings of fact—judicial notice of previous orders

The trial court did not err in a termination of parental rights case by its finding of fact twelve even though respondent father contends it is a very lengthy summation of what is apparently the contents of the court files in the underlying neglect case and that none of the alleged facts recited therein were before the trial court at the termination of parental rights hearing, because: (1) the trial court took judicial notice of previous orders in the cause, and the pertinent orders document respondent's progress in completing the remedial efforts ordered by the court prior to 19 August 2004; (2) a trial court may take judicial notice of earlier proceedings in the same cause and it is not necessary for either party to offer the file into evidence; and (3) there was clear, cogent, and convincing evidence to support finding twelve.

## 2. Termination of Parental Rights— conclusion of law—best interests of child

The trial court did not err in a termination of parental rights case by its finding of fact sixteen (more properly viewed as a conclusion of law) that it was in the best interest of the child that respondent father's parental rights be terminated, because: (1) the court considered the minor child's tender age of six years, the fact the child had been placed in foster care for a year and a half, the child's adjustment to her placement, and the foster family's commitment to the child; and (2) the findings concerning the minor child combined with the court's findings concerning respondent's failure to complete the court ordered tasks of obtaining psychological evaluation and substance abuse assessment and completing anger management classes, respondent's failure to visit with the minor child on a consistent basis prior to 10 January 2005 (approximately three weeks prior to the termination hearing), and respondent's homelessness and hungry status within two months of the termination hearing constitute findings sufficient to support the conclusion that it was in the child's best interest to terminate respondent's parental rights.

IN RE M.N.C.

[176 N.C. App. 114 (2006)]

**3. Termination of Parental Rights— neglect—clear, cogent, and convincing evidence**

The trial court did not abuse its discretion by terminating respondent father's parental rights, because: (1) the trial court's findings are supported by clear, cogent, and convincing evidence; and (2) the findings support the conclusion that neglect existed as a ground for termination.

Appeal by respondent from an order entered 25 February 2005 by Judge Donna H. Johnson in Cabarrus County District Court. Heard in the Court of Appeals 11 January 2006.

*Kathleen A. Widelski for petitioner-appellee Cabarrus County Department of Social Services.*

*Victoria Bost for guardian ad litem-appellee.*

*Carol Ann Bauer for respondent-appellant.*

SMITH, Judge.

Respondent father ("respondent") appeals the trial court's order terminating his parental rights to the minor child M.N.C. For the reasons stated herein, we affirm.

On 24 September 2003, M.N.C., age five, and her fourteen year old sister, D.C.C., were placed in the custody of the Cabarrus County Department of Social Services ("CCDSS") pursuant to a petition alleging the minor children were neglected by their parents in that "the parents regularly engage in domestic violence and use drugs in front of the children". On 4 December 2003, respondent consented to an order adjudicating his daughters neglected. CCDSS filed a motion in the cause to terminate respondent's parental rights on 14 September 2004, alleging respondent (1) neglected the minor child; (2) failed to pay a reasonable portion of the cost of care of the juvenile although physically and financially able to do so; and (3) was incapable of providing for the proper care and supervision of the minor child such that she is dependent and there is a reasonable probability that such incapacity will continue for the foreseeable future.

Following a hearing conducted on 3 and 4 February 2005, the trial court entered an order terminating respondent's parental rights to the minor child M.N.C. Respondent appeals.

IN RE M.N.C.

[176 N.C. App. 114 (2006)]

Respondent presents the following issues for appellate review: (1) whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence; (2) whether the findings support the conclusions of law; and (3) whether the trial court abused its discretion in terminating respondent's parental rights.

In a proceeding to terminate parental rights, the trial court must first determine if one or more statutory grounds exist for termination pursuant to N.C. Gen. Stat. § 7B-1111 (2003). The petitioner has the burden of proving by clear, cogent, and convincing evidence that such ground(s) exist. The standard for appellate review of the trial court's determination that sufficient ground(s) exist pursuant to N.C. Gen. Stat. § 7B-1111 is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. *In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996).

[1] Respondent contends the trial court "erred in finding of fact #12 in that the evidence in that finding was not properly before the trial court." We disagree.

Finding twelve reads:

That statutory grounds exist by clear, cogent and convincing evidence to terminate the parental rights of [respondent] in that the Respondent has neglected the juveniles within the meaning of N.C.G.S. 7B-101(15) and there is a likelihood that such neglect will continue in the future.

a. Reports to the Cabarrus County Department of Social Services regarding the . . . family began in March 1992. A petition was filed [i]n July 1993. The issues which led to the filing [of] said petition were drug use by [respondent mother] and [respondent father] and domestic violence in the home. A non secure custody order was issued for D.C.C. and her older sibling. The family entered into an agreement to address the issues of drug use and domestic violence and the petition was dismissed. On September 22, 2003 another report was made. During an investigation, D.C.C. and M.N.C. confirmed their parents' drug use and domestic violence. On September 23, 2003, D.C.C. presented herself to the Cabarrus County Department of Social Services and stated that she was afraid to go home. The social worker went to the . . . home on September 24, 2003, but no one would answer the door.

IN RE M.N.C.

[176 N.C. App. 114 (2006)]

Thirty minutes after the social worker left the home, [respondent mother] removed M.N.C. from school. When the social worker returned to the . . . home, she found [respondent mother] irate and irrational. [Respondent] was unsteady on his feet and appeared to be under the influence of an impairing substance.

b. On December 14, 2003 [respondent] appeared and stipulated to neglect of the children.

c. Pursuant to a disposition, [respondent] agreed and was ordered to complete the following tasks designed to address the issues which led to the children's removal from his home:

1) Submit to a psychological evaluation and complete all recommended treatment.

2) Submit to a substance abuse assessment to be performed by Northeast Psychiatric and Psychological Institute. The initial appointment was to be scheduled by December 15, 2003.

3) Submit to random drug screens within 8 hours of the request by the social worker.

4) Attend counseling for anger management.

5) Attend a parenting class and demonstrate age appropriate discipline techniques.

6) Obtain and maintain stable housing[.]

7) Contact child support enforcement to enter into a support agreement.

8) Contact the social worker weekly as to the status of the case and his progress on ordered tasks.

9) Abide by a visitation plan.

10) Inform the social worker of any transportation problems.

11) Cooperate with D.C.C.'s counseling if recommended.

d. A review was scheduled for February 19, 2004, but the matter was continued for good cause shown. [Respondent] was present and told in open court to return on March 25, 2004.

IN RE M.N.C.

[176 N.C. App. 114 (2006)]

e. A review was held on March 25, 2004 before the undersigned Judge. Despite actual notice, [respondent] did not appear. A court summary and a GAL report were admitted. The Court found that [respondent] had made minimal progress in addressing the issues which led to placement.

1) [Respondent] attended the first appointment for his psychological evaluation but was later terminated for missed appointments.

2) [Respondent] completed a substance abuse assessment, however, he did so before the Department could submit background information to the assessing agency.

3) [Respondent] submitted to two drug screens which were negative.

4) [Respondent] began attendance at anger management classes and did well during the sessions initially. However, he did not complete the program and therefore he was terminated from classes.

5) [Respondent] attended a parenting class and demonstrated age appropriate discipline techniques. He acknowledged that drugs and his anger issues had affected his family.

6) [Respondent's] housing was unstable. He had lived at different places since the disposition.

7) The social worker verified that [respondent] received disability.

8) [Respondent] did not contact the social worker weekly. He did speak to her after visits.

9) [Respondent] abided by a visitation plan.

10) [Respondent] did not report any transportation problems.

11) [Respondent] attended one session of counseling with D.C.C.

f. [Respondent] was personally served on June 3, 2004 for a June 18, 2004 review hearing. He appeared that day and was ordered to submit to drug testing and the matter was contin-

ued until June 24, 2004 for the review and the results of the drug test. A court summary and [GAL] report were admitted into evidence.

g. A review was held on June 24, 2004. Despite actual notice in open court, [respondent] did not appear. A court summary and GAL report were admitted. After review of the court summary and [GAL] report submitted on June 18, 2004 and the addendum submitted on June 24, 2004, the Court found that [respondent] had made no progress in addressing the issues which led to placement. The Court also found that reasonable efforts to reunify the children with [respondent] were futile and inconsistent with the children's need for a safe and permanent home within a reasonable period of time.

1) [Respondent] had been discharged for failure to attend appointments for his psychological evaluation. He was given another chance but failed to show for that appointment.

2) [Respondent] had not completed a substance abuse assessment wherein the Department was given the opportunity to submit background information to the assessing agency.

3) [Respondent] refused to submit to drug testing on April 7 and 21, 2004.

4) [Respondent] had not completed anger management classes.

5) [Respondent] attended a parenting class and demonstrated age appropriate discipline techniques.

6) [Respondent] had housing, but each time the social worker went to the home, no one would answer the door.

7) [Respondent] had not contacted the social worker weekly.

8) [Respondent] attended seven out of eleven visits.

9) [Respondent] did not report any transportation problems.

10) [Respondent] failed to complete a drug screen as ordered by the Court in open court on June 18, 2004.

**IN RE M.N.C.**

[176 N.C. App. 114 (2006)]

h. A permanency planning hearing was held on July 15 and 16, 2004. [Respondent] was present. A court summary was admitted into evidence. The Court determined that the permanent goal for the children was adoption. Since the June 25, 2004 review, [respondent] had attended one out of three visits. He missed the third visit because he had a court date for criminal charges against him. He did not provide verification of completion of any of the tasks previously ordered by the Court. The matter was continued until August 19-20, 2004.

i. A permanency planning review was held on August 19, 2004. [Respondent] was not present although he had received actual notice of the prior court date. A court summary was admitted into evidence. Since [respondent] had attended all of the visits. He did not provide verification of completion of any of the tasks previously ordered by the Court.

j. Since August 19, 2004 [respondent] has not provided verification of completion of any of the court ordered tasks. He has not completed a psychological evaluation. He has not completed an approved substance abuser assessment. He has not completed anger management classes. He has not contacted the social worker weekly. On December 6, 2004 [respondent] told the social worker that he was homeless and hungry with outstanding warrants. He was incarcerated and released on January 10, 2004. He currently resides with his sister. He did not visit on a consistent basis until January 10, 2005.

Respondent argues finding twelve is "a very lengthy summation of what is apparently the contents of . . . the court files in the underlying neglect case" and that "[n]one of the alleged facts" recited therein "were before the trial court at the Termination of Parental Rights hearing." It is apparent from a careful review of the record that the trial judge took judicial notice of previous orders in the cause including the consent order filed on 4 December 2003 and review orders filed on 19 February 2004, 25 March 2004, 18 and 24 June 2004, 15 and 16 July 2004, and 19 August 2004. The orders document respondent's progress in completing the remedial efforts ordered by the court prior to 19 August 2004. This Court has held "[a] trial court may take judicial notice of earlier proceedings in the same cause" and that it is not necessary for either party to offer the file into evidence. *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991) (cit-

**IN RE M.N.C.**

[176 N.C. App. 114 (2006)]

ing *Matter of Byrd*, 72 N.C. App. 277, 279, 324 S.E.2d 273, 276 (1985)). We note the record in the instant case does not indicate the trial judge expressly stated she was taking judicial notice of prior orders in the cause. Though not required, we believe the better practice would be to explicitly give all parties notice by announcing in open court that it is taking judicial notice of the matters contained in the court file.

Finding twelve is also based, in part, on the testimony of Carrie Phillips ("Phillips), a social worker with CCDSS. Phillips testified at the termination hearing concerning various meetings she had with respondent to discuss the agency's case plan and respondent's attempts to fulfill the requirements of the plan. Phillips also testified that she met with respondent on 6 December 2004 and that respondent stated he was hungry, homeless, and was planning to turn himself in to law enforcement because he had outstanding warrants. Respondent was incarcerated that date and released on 10 January 2004. At the time of the hearing, respondent was residing with his sister. Phillips also testified concerning respondent's visits with the minor children. We conclude from the foregoing that there was clear, cogent and convincing evidence to support finding twelve.

[2] Respondent also argues that "the trial court erred in finding of fact #16 in that it is not supported by the evidence nor is it a proper finding of fact."

Finding sixteen reads as follows:

[I]t is in the best interest of M.N.C. that the parental rights of [respondent] be terminated.

 a. M.N.C., age six, has been in the same placement for one and one-half years. She is currently placed with D.C.C. and her nephew.

 b. M.N.C.'s foster family is committed to her. M.N.C. has undergone therapy and she has adjusted well.

Respondent properly characterizes that portion of finding sixteen that speaks to the best interest of the child as a conclusion of law.

Matters of judgment are not factual; they are conclusory and based ultimately on various factual considerations. Facts are things in space and time that can be objectively ascertained by one or more of the five senses or by mathematical calculation. Facts, in turn, provide the bases for conclusions.

IN RE M.N.C.

[176 N.C. App. 114 (2006)]

*State ex rel. Utils. Comm. v. Public Staff*, 322 N.C. 689, 693, 370 S.E.2d 567, 570 (1988). "[B]est interest determinations are conclusions of law because they require the exercise of judgment." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). "We note that, if a finding of fact is essentially a conclusion of law it will be treated as a conclusion of law which is reviewable on appeal." *In re M.R.D.C.*, 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004) (quotation and citation omitted), *disc. review denied*, 359 N.C. 321, 611 S.E.2d 413 (2005).

Respondent challenges the trial court's conclusion that it was in the best interest of the child that respondent's parental rights be terminated arguing the conclusion was not supported by the evidence. We disagree.

Where the trial court finds circumstances authorizing termination under N.C. Gen. Stat. § 7B-1111, the trial court must next determine whether termination is in the best interests of the minor child.

In making this determination, the court shall consider the following:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a).

In the instant case the court considered the minor child's tender age of six years, the fact the child had been placed in foster care for a year and a half, the child's adjustment to her placement, and the foster family's commitment to the child. Those findings concerning the minor child combined with the court's findings concerning respondent's failure to complete the court ordered tasks of obtaining a psychological evaluation and substance abuse assessment and completing anger management classes; respondent's failure to visit with

the minor child on a consistent basis prior to January 10, 2005 (approximately three weeks prior to the termination hearing); and respondent's homelessness and hungry status within two months of the termination hearing constitute findings sufficient to support the conclusion that it was in the child's best interest to terminate respondent's parental rights. We hold the trial court did not err in concluding it was in the child's best interest to terminate respondent's parental rights.

[3] Lastly, we address respondent's contention that the trial court abused its discretion in terminating respondent's parental rights. The trial court has discretion to terminate parental rights if it finds termination would be in the best interest of the juvenile. *In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001). The standard for appellate review of the trial court's decision to terminate parental rights is abuse of discretion. *In re Brim*, 139 N.C. App. 733, 745, 535 S.E.2d 367, 374 (2000). Based on our review of the testimony in this case, the trial court's findings which we hold are supported by clear, cogent, and convincing evidence and support the conclusion that neglect existed as a ground for termination, we discern no abuse of discretion in the trial court's decision to terminate respondent's parental rights to the minor child. The order of the trial court is affirmed.

Affirmed.

Judges BRYANT and CALABRIA concur.