An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-133

Filed 15 October 2025

Rockingham County, No. 23JT000091-780

IN THE MATTER OF: B.L.G.D.

Appeal by Respondent from order entered 21 October 2024 by Judge James A. Grogan in Rockingham County District Court. Heard in the Court of Appeals 30 September 2025.

> *Parent Defender Annick Lenoir-Peek, by Senior Assistant Parent Defender J. Lee Gilliam, for Respondent-Appellant Mother.*
>
> *No brief filed for Petitioner-Appellee Rockingham County Department of Health and Human Services, Division of Social Services.*
>
> *Michelle F. Lynch for Petitioner-Appellee Guardian ad litem.*

PER CURIAM.

Brittney Dickens (Mother) appeals from the trial court's order terminating her parental rights to her minor child, Ben.[1] For the following reasons, we affirm the trial court's termination order.

## I.    Factual and Procedural Background

---

[1] In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor child by a pseudonym to protect his identity. *See* N.C. R. App. P. 42(b).

Ben was born to Mother in January 2020. Shortly after his first birthday, Mother entered a consent order that granted Ben's maternal grandmother (Grandmother) legal and physical custody of him. In September 2021, Ben moved into the home of Grandmother's first cousin for three months, after which he returned to Grandmother's home, where Mother also lived.

On 27 March 2023, Rockingham County Department of Health and Human Services, Division of Social Services (DSS) received a neglect report for Ben alleging injurious environment and improper care. The report alleged that Mother, Grandmother, and Mother's boyfriend were found with ten ounces of methamphetamine in a vehicle during a traffic stop. Grandmother denied that the methamphetamine belonged to her but admitted that her "personal amount of meth" was in a jewelry box in her bedroom. When officers subsequently searched the home, they could not find Grandmother's methamphetamine due to the home's condition. The officers observed junk throughout, insects on the bed, and feces on the floor.

A DSS social worker visited the home later that same day and noted that Mother did not appear to understand the danger of using fentanyl while caring for a child. Mother admitted to using fentanyl while caring for Ben and stated that "lots of other substances can be mixed in with fentanyl." Grandmother denied her statement to the officers that methamphetamine was stored in her jewelry box and any knowledge of the drugs found in the vehicle. Considering the allegations and the home's condition, the social worker discussed the option of a voluntary temporary

placement for Ben. Grandmother identified a family friend as a potential placement, in whose care Ben was later placed.

On 18 April 2023, the social worker spoke with Grandmother's cousin, who shared concerns about Ben returning to Grandmother's care due to ongoing drug use. She also opined that Grandmother's greater concern was for obtaining money for Ben's care than for Ben's well-being. On 24 April 2023, Grandmother's cousin filed a motion for emergency custody of Ben, which was granted. Ben was placed in her care the following day. Shortly after, she took Ben to the doctor and learned he had missed the last five checkups over a period of nearly two years.

On 1 May 2023, DSS conducted a home visit at the cousin's residence and observed several safety concerns, including plywood covering a large hole in the kitchen floor, a broken back bedroom window patched with plastic, and a living-room window with a broken upper interior panel. The cousin was also facing eviction at the time of the visit. DSS was concerned about the cousin's history with child protective services involving her two children. For these reasons, DSS determined that she was not an appropriate caretaker for Ben.

On 2 May 2023, DSS filed a petition alleging Ben was a neglected juvenile based on his exposure to an injurious environment. The petition identified Mother, Grandmother, Grandmother's cousin, and a putative father as respondents and stated that Grandmother was not an appropriate caregiver due to concerns regarding her drug use and her decision to allow Mother, who also struggled with substance

abuse, to care for Ben. The petition further stated that Grandmother tested positive for illicit substances. Additionally, DSS found text messages in which Grandmother offered to bring fentanyl to Mother and methamphetamine to someone else. That same day, the trial court granted DSS nonsecure custody of Ben.

On 15 May 2023, both Mother and Grandmother entered into DSS case plans. Mother's case plan identified areas of concern, including parenting skills, substance abuse, and the need for a social support system. Under the plan, Mother agreed to maintain safe and stable housing, obtain and maintain stable employment, attend all scheduled visits and demonstrate appropriate parenting during those visits, complete parenting classes, undergo a mental health and substance abuse assessment and follow any resulting recommendations, complete a parenting psychological evaluation, and comply with requested drug screens.

On 26 June 2023, the trial court held an initial adjudication and dispositional hearing. At the adjudication hearing, the trial court removed Grandmother's cousin as a party to the case, incorporated the juvenile petition by reference, adopted its allegations as findings of fact, and adjudicated Ben as a neglected juvenile. At the dispositional hearing, the trial court found that Mother and Grandmother were visiting Ben weekly and that the visits were going well. The trial court also determined that the DSS case plans were appropriate and directed Mother and Grandmother to comply with the requirements. The trial court found that Mother had not secured housing or employment though she informed the court that she

intended to do so, she had not completed a mental health or substance abuse assessment, and she had not complied with the required drug screenings.

On 9 November 2023, the trial court conducted a permanency planning hearing. Mother's weekly visits remained supervised and limited to one hour. The social worker reported no concerns regarding these visits. Although Mother had obtained housing, she remained unemployed and had not completed mental health or substance abuse assessments. She had started parenting classes but needed to make up three of those classes; she had also been the subject of behavioral concerns reported by the class instructor. Mother submitted to a drug screen on 11 August 2023, which tested positive for amphetamine, methamphetamine, and fentanyl. The trial court ordered Ben's primary plan to be reunification with Grandmother, with a concurrent plan of adoption.

On 28 March 2024, the trial court held another permanency planning hearing. Mother continued to attend weekly supervised visits with Ben but missed one visit and was frequently late. She remained unemployed and had yet to complete two remaining parenting classes. She submitted to a drug screen on 5 March 2024, which tested positive for methamphetamine and amphetamine. The trial court found that Mother was not making adequate progress and changed Ben's primary plan to adoption, eliminating reunification. The trial court reduced Mother's visitation to one hour per month, on the condition that the visit would be canceled if she failed to arrive on time. The trial court also removed Grandmother as a party to the case, following

DSS's request to proceed with termination of Mother's parental rights.

On 13 June 2024, DSS filed a motion to terminate Mother's parental rights (termination motion). DSS alleged grounds for termination based on neglect, willfully leaving Ben in foster care for more than twelve months without making reasonable progress, and dependency. *See* N.C.G.S § 7B-1111(a)(1)-(2), (6).

On 14 October 2024, the trial court held a hearing on the termination motion. Mother was not present at the hearing but was represented by counsel. Her counsel moved for a continuance at the start of the hearing, which the trial court denied. The trial court received testimony from the assigned social worker and the adoption social worker. The trial court also took judicial notice of the initial adjudication order from the 26 June 2023 hearing.

By order entered 21 October 2024, the trial court found three grounds for termination of Mother's parental rights: neglect, willfully leaving Ben in foster care for more than twelve months without making reasonable progress, and dependency. The trial court also concluded that termination of Mother's parental rights was in Ben's best interest. Mother timely appealed.

## II.    Jurisdiction

This Court has jurisdiction under N.C.G.S. § 7B-1001 to hear Mother's appeal from an "order that terminates [her] parental rights." N.C.G.S. § 7B-1001(a)(7) (2023).

## III.    Analysis

Mother challenges several of the trial court's adjudicatory findings as unsupported by clear and convincing evidence. She further challenges all three grounds for termination as unsupported by the remaining unchallenged findings. Alternatively, Mother argues she received ineffective assistance of counsel during the termination hearing.

We review a termination of parental rights to determine "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re S.N.*, 194 N.C. App. 142, 146 (2008) (quotation omitted). The trial court's "[f]indings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary." *In re S.R.G.*, 195 N.C. App. 79, 83 (2009). All unchallenged findings of fact are "binding on appeal." *In re G.B.*, 377 N.C. 106, 111 (2021). We review the trial court's conclusions of law *de novo*. *See In re D.T.L.*, 219 N.C. App. 219, 221 (2012).

## A. Challenged Findings of Fact

Mother challenges the trial court's Findings of Fact 28–44 and 46–49 as unsupported by clear and convincing evidence. She contends that no testimony or exhibits were presented at the hearing to support these findings. Each of the contested findings concerns Mother's case plan and her progress toward fulfilling its requirements. The adjudication hearing lasted approximately fourteen minutes, beginning with DSS's direct examination of the assigned social worker. She testified that she was the movant on the termination motion and affirmed its allegations as

true and accurate to the best of her knowledge. She testified that between the termination motion's filing on 13 June 2024 and the conclusion of her involvement at the end of the month, Mother failed to attend her scheduled visit and was unable to complete a drug screen. No other parties questioned the social worker following DSS's direct examination.

DSS next called the adoption social worker, who testified that, since her assignment to Ben in August 2024, Mother had not missed any visits. However, she noted that Mother declined drug screens in both September and October because she stated the results would be positive. She also testified that Mother had not completed any case plan requirements besides obtaining housing, Mother's drug screens were consistently positive, and the underlying conditions that led to Ben's placement in DSS custody were still present. Subsequently, the trial court took judicial notice of the initial adjudication order, and the hearing concluded.

Our Supreme Court addressed a similar evidentiary challenge to findings of fact in *In re Z.G.J.*, 378 N.C. 500, 507 (2021). There, the adjudication hearing was brief. DSS called a single witness, no parties conducted cross-examination, and DSS requested that the termination petition be admitted into evidence. *Id.* at 506–07. The respondent argued that the evidence was insufficient because the trial court relied solely on the termination petition's allegations as the basis for adjudication evidence. But the Court held that, although the sole witness's testimony was brief, the witness reaffirmed the termination petition's allegations. *Id.* at 508. The respondent also had

the opportunity to cross-examine the witness but declined to do so. Because DSS presented live testimony and the witness adopted the termination petition's allegations, the trial court "did not err by relying on [the witness's] testimony adopting the allegations in the termination petition when it entered its adjudication order." *Id.*

Here, the assigned social worker affirmed that the termination motion's allegations were true and accurate to the best of her knowledge. Challenged Findings of Fact 28–40 are taken directly from the termination motion. As in *In re Z.G.J.*, because the social worker adopted the termination motion's allegations during her testimony, the trial court properly relied on those allegations in entering its order. Moreover, Mother presented no evidence opposing the termination motion's allegations, did not object to the trial court's judicial notice of the initial adjudication order, and declined to cross-examine either witness.

The remaining challenged Findings of Fact 41–44 and 46–49 are supported by prior orders in the record. A trial court may "judicial[ly] notice . . . earlier proceedings in the same cause" without "either party . . . offer[ing] the[ir] file[s] into evidence." *In re M.N.C.*, 176 N.C. App. 114, 120 (2006) (quotation omitted). The trial court in *In re M.N.C.* did not explicitly announce that it was taking judicial notice of prior orders, and this Court acknowledged that, while it is better practice to do so on the record, it is not required.

Here, a review of the record confirms that the trial court supported its findings

of fact with prior orders detailing Mother's lack of case plan progress. Both social workers' testimony further supported these findings. Because the challenged findings are either contained in the termination motion or supported by record evidence, we conclude the trial court's findings are supported by clear and convincing evidence.

## B. Willful Failure to Make Reasonable Progress

Next, Mother argues that the trial court erred in terminating her parental rights under N.C.G.S. § 7B-1111(a)(2). She contends that the trial court's findings of fact are insufficient to support its conclusion that she failed to make reasonable progress in correcting the conditions that led to Ben's removal.

Under N.C.G.S. § 7B-1111(a)(2), a trial court may terminate a respondent's parental rights if she "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the [court's] satisfaction" that she made "reasonable progress under the circumstances . . . in correcting those conditions which led to the [juvenile's] removal." N.C.G.S. § 7B-1111(a)(2) (2023). Under this ground, the trial court must determine "whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." *In re K.H.*, 375 N.C. 610, 613 (2020) (quotation omitted).

When evaluating whether a parent has made reasonable progress, "[p]arental compliance with a judicially adopted case plan is relevant in determining whether

grounds for termination exist." *In re J.S.*, 374 N.C. 811, 815 (2020) (quotation omitted). A trial court evaluates case plan progress "for the duration leading up to the hearing on the . . . [termination] petition." *Id.* The trial court may conclude that "extremely limited progress" in addressing the conditions that led to removal is sufficient to support termination. *In re M.S.*, 378 N.C. 30, 37 (2021) (quotation omitted). On the other hand, this Court has acknowledged that "perfection is not required to reach the 'reasonable' standard." *In re S.D.*, 243 N.C. App. 65, 73 (2015). Nevertheless, "[a] respondent's prolonged inability to improve her situation, despite some efforts in that direction, . . . will support a finding of lack of progress . . . sufficient to warrant termination of parental rights" under N.C.G.S. § 7B-1111(a)(2). *J.S.*, 374 N.C. at 815 (third alteration in original; quotation omitted).

Here, Mother does not dispute that Ben was placed outside of her care for more than twelve months, as he entered DSS custody on 1 May 2023 and the termination motion was filed on 13 June 2024. Thus, we consider whether Mother made reasonable progress on her case plan. The trial court detailed the circumstances that prompted DSS's removal of Ben from Mother's care on 1 May 2023 and his subsequent adjudication. Specifically, DSS received a report concerning the condition of the home, allegations of Mother's inadequate care for Ben, and concerns regarding Mother's drug use. The trial court also made findings outlining the requirements of Mother's case plan, which she entered into on 15 May 2023. The case plan required Mother to: maintain safe and stable housing, obtain and maintain stable

employment, attend all scheduled visitations and demonstrate appropriate parenting during those visits, complete parenting classes, undergo a mental health and substance abuse assessment and follow any resulting recommendations, complete a parenting psychological evaluation, and comply with requested drug screens.

The trial court made further findings regarding Mother's compliance with her case plan through the date of the termination hearing. Regarding drug screens, Mother tested positive on four separate occasions between June 2023 and March 2024. She declined to participate in three drug screens between May to October 2024, stating on one occasion that she would test positive for illicit substances. Although Mother informed DSS on several occasions that she intended to enter a rehabilitation facility for substance abuse treatment, she failed to follow through. Mother's visitation with Ben was also inconsistent. She frequently arrived late, resulting in a reduction of her visits to once a month. Even after the reduction, she often rescheduled or failed to attend visits altogether. As of the 14 October 2024 termination hearing, Mother had not completed the required parenting classes, secured consistent employment, or engaged in any mental health or substance abuse treatment. The trial court acknowledged that Mother had obtained housing but also found that she did not consistently visit Ben and continued to test positive for illicit substances. Her primary support system was Grandmother, who also struggled with substance abuse. For these reasons, the trial court found that Mother had made minimal to no progress on her case plan.

We agree with the trial court's conclusion that Mother failed to make reasonable progress in addressing the conditions that led to Ben's removal. *See J.S.*, 374 N.C. at 816 (requiring "a nexus between the [case plan] components . . . with which [the respondent] failed to comply and the conditions which led to [the child's] removal from the parental home." (third and fourth alterations in original; quotation omitted)). Because the conditions that led to Ben's removal remained unresolved at the time of the hearing and Mother failed to make any progress in the identified areas of concern, we conclude that her "extremely limited progress" is sufficient to support termination of her parental rights. *M.S.*, 378 N.C. at 37.

We hold that the trial court properly terminated Mother's parental rights under N.C.G.S. § 7B-1111(a)(2) for willfully leaving Ben in foster care for more than twelve months without making reasonable progress. Where "an appellate court determines there is at least one ground to support a [trial court's] conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." *In re P.L.P.*, 173 N.C. App. 1, 8 (2005) (quotation omitted), *aff'd per curiam mem.*, 360 N.C. 360 (2006). Accordingly, we do not address the remaining grounds for termination.

### C. Ineffective Assistance of Counsel

Alternatively, Mother argues that she received ineffective assistance of counsel, citing her counsel's lack of participation during the termination hearing, including the failure to object, cross-examine witnesses, or make a closing argument.

In a termination proceeding, a respondent "has a right to counsel," *In re J.A.A.*, 175 N.C. App. 66, 74 (2005) (citing N.C.G.S. § 7B-1101), which "includes the right to effective assistance of counsel," *In re S.C.R.*, 198 N.C. App. 525, 531 (2009). To establish a claim of ineffective assistance of counsel, the "respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive [her] of a fair hearing." *In re B.S.*, 378 N.C. 1, 5 (2021) (quotation omitted). To demonstrate deprivation of a fair hearing, the respondent must show "a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* (quotation omitted).

Assuming *arguendo* deficient performance by her counsel, Mother has failed to demonstrate a reasonable probability of a different outcome to the proceeding. As discussed above, the trial court properly terminated Mother's parental rights under N.C.G.S. § 7B-1111(a)(2). The trial court supported its findings and conclusions with the record, which established that Mother made minimal to no progress on her case plan. Additionally, Mother has not challenged the trial court's determination that termination was in Ben's best interest. *See Koufman v. Koufman*, 330 N.C. 93, 97 (1991) (an unchallenged finding "is presumed to be supported by competent evidence and is binding on appeal.").

Moreover, Mother has not identified how the outcome would have changed had her counsel objected, cross-examined witnesses, or delivered a closing argument. Her sole contention concerns an alleged error in the termination motion, which stated

that Ben was residing with a prospective adoptive family in June 2024, even though that family had informed DSS around the same time that they would not proceed with adoption. Mother argues that cross-examination would have revealed this alleged error.

However, by 21 September 2024, Ben had been placed with a new prospective adoptive family. The trial court found that Ben had adjusted well to his new placement, appeared bonded with the family, and had a strong likelihood of adoption. Even if the statement in the termination motion was erroneous, Mother has not shown any effect on the hearing's outcome, particularly given the trial court's unchallenged assessment of Ben's best interests. Because the record supported the trial court's ground for termination and Mother has not challenged any dispositional findings or conclusions of law, she cannot show a reasonable probability of a different result. We therefore deny that she received ineffective assistance of counsel.

**IV.    Conclusion**

For the reasons above, we affirm the trial court's 21 October 2024 order terminating Mother's parental rights to Ben.

AFFIRMED.

Panel consisting of Chief Judge DILLON, and Judges FLOOD and MURRY.

Report per Rule 30(e).