An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-714

Filed 1 April 2026

Gaston County, No. 23JA000101-350

IN RE: B.A.

Appeal by respondents from order entered 5 May 2025 by Judge Angela G. Hoyle in Gaston County District Court. Heard in the Court of Appeals 10 March 2026.

> *J. Edward Yeager, Jr., for petitioner-appellee Gaston County Department of Health and Human Services.*
>
> *Raleigh Divorce Law Firm, by Heather Williams Forshey and Nicolette M. Ferriolo, for appellee guardian ad litem.*
>
> *Micah Jones for respondent-appellant mother.*
>
> *Jason R. Page for respondent-appellant father.*

ZACHARY, Judge.

Respondent-Parents appeal a permanency planning order which eliminated reunification from the permanent plan of their son, Bill,[1] and established a guardianship. After careful review, we vacate the portion of the order waiving future

---

[1] We refer to the juvenile by the pseudonym to which the parties have stipulated. *See* N.C.R. App. P. 42(b).

review hearings and remand to the trial court for additional findings of fact consistent with the requirements of N.C. Gen. Stat. §§ 7B-906.2(d) (2023)[2] (requiring written findings demonstrating the degree of success or failure toward reunification) and 7B-906.1(n) (waiver of future review hearings).

## I.     Background

On 29 March 2023, the Gaston County Department of Health and Human Services ("DHHS") filed a petition seeking an adjudication that Bill was neglected. The petition listed Respondent-Father as "[p]utative" father,[3] and stated that Respondent-Parents were married neither at the time of Bill's birth nor at the time of the filing of the petition.

In the fall of 2022, DHHS received a report that Bill "had missed 22 days of school," 12 of which were unexcused absences. Bill's school had attempted to engage with Respondent-Mother concerning the absences but she was uncooperative. A second report, which DHHS received in January 2023, stated that Respondent-Mother "had been arrested and . . . [Respondent-F]ather and [Bill] were seen walking down the road. . . . Respondent[-]Mother submitted to a drug screen and was positive for oxycodone and cocaine. . . . [Respondent-F]ather did not go to the requested drug

---

[2] On 5 May 2025, the trial court's order was entered. On 19 June 2025, the North Carolina General Assembly passed H.B. 612, which amended certain portions of the juvenile code, including subsections applicable to the instant case. H.B. 612, 2025 Gen. Assemb., First Sess. (N.C. 2025).

[3] Genetic testing ordered by the trial court later confirmed that Respondent-Father was Bill's biological father; on 7 August 2023, the court entered an order of paternity.

screen." In the petition, DHHS stated that Respondent-Mother had a history of substance abuse, that Respondent-Father had admitted to regular use of marijuana, and that both were homeless and living with relatives. In addition, Respondent-Mother had been charged with conspiracy, breaking or entering, and larceny. On 29 March 2023, DHHS was awarded nonsecure custody of Bill.

Following an adjudication and disposition hearing, the trial court entered an order on 16 November 2023 adjudicating Bill as neglected and ordering DHHS to maintain custody. Respondent-Parents agreed to follow the recommendations of DHHS as set out in the predisposition report: they were to "enter a case plan," "complete a substance[-]abuse and mental[-]health assessment," "submit to random drug screens," "maintain safe, appropriate, and stable housing," "attend visitations," "demonstrate effective parenting skills," "obtain and maintain employment and/or additional supports or income," and "refrain from any illegal activity." (Capitalization omitted).

On 23 January 2024, the trial court conducted its first permanency planning hearing. In its order entered on 26 March 2024, the court found that both Respondent-Parents had entered into their case plans but that neither of them had "completed parenting classes; completed a dual mental[-]health and substance[-]abuse assessment; provided proof of employment; [or] provided proof of stable housing." Respondent-Father had attended only 12 of 36 offered visitations and was not present during the hearing. The court set Respondent-Father's visitation at one hour per

month and established a primary permanent plan for Bill of reunification with a concurrent plan of guardianship.

The next review hearing occurred on 23 April 2024. The trial court found that Respondent-Mother was making progress on her case plan. She was maintaining contact with DHHS, had "completed a mental[-]health and substance[-]abuse assessment," had "engaged in outpatient treatment services," had "enrolled in parenting classes," and had attended the last review meeting; however, she had not "completed parenting classes" or "provided proof of housing." Respondent-Father had "not made any progress during [the past] review period" nor attended any of the three offered visitations. The court maintained Bill's primary permanent plan as reunification with a concurrent plan of guardianship.

The trial court conducted several more review hearings over the next year, with the penultimate hearing occurring on 1 April 2025. At this hearing, DHHS "inform[ed] the [c]ourt that [it was] requesting to modify the primary plan from reunification to guardianship," to which Respondent-Parents objected. DHHS further informed the court that Respondent-Mother had "tested positive for hydrocodone"; although she had a prescription for the drug, the prescription was issued in July 2024, and Respondent-Mother had "not been testing positive for hydrocodone in her past drug screens." Respondent-Mother had also tested positive for methamphetamine. DHHS also noted that Respondent-Father had "not provided proof of employment to [DHHS] and [had] tested positive for marijuana." In its order entered 25 April 2025,

the court continued the hearing. Pending completion of the review hearing, the court maintained Bill's primary permanent plan as reunification with a concurrent plan of guardianship.

The trial court completed its final review hearing on 15 April 2025. In its order entered on 5 May 2025, the court found that Respondent-Parents had made some progress on their case plans. However, Respondent-Mother had been "discharged from outpatient treatment due to noncompliance"; had "not completed substance[-]abuse outpatient services"; had not "submitted to all requested drug screens"; had not "maintained sobriety"; and had "not submitted verification of employment for March 2025 and April 2025." Respondent-Father had "not provided proof of employment"; had not "provided proof of stable housing"; had not "enrolled in substance[-]abuse outpatient treatment"; and had "not demonstrated continued sobriety." The court noted that one of the main issues that brought Bill "into [DHHS]'s custody [was] . . . substance abuse," yet Respondent-Mother "tested positive for methamphetamine in March 2025" and Respondent-Father "continued to test positive for marijuana." The court relieved DHHS of further reunification efforts, eliminated reunification from Bill's permanent plan, changed Bill's permanent plan to guardianship, waived further review hearings, and awarded custody of Bill to the appointed guardians. In addition, the court granted Respondent-Mother two hours per week of visitation and granted Respondent-Father two hours of visitation every two weeks.

Respondent-Parents each gave timely notice of appeal.

## II.     Discussion

Respondent-Father raises three issues on appeal: whether 1) "the trial court erred by eliminating reunification because it did not comply with statutory requirements and the findings of fact do not support the conclusions that continued efforts toward reunification would be futile or that Bill could not be placed with his parents within six months"; 2) "the trial court erred by waiving further review hearings without making the findings required by [N.C. Gen. Stat.] § 7B-906 by clear, cogent, and convincing evidence"; and 3) "the trial court abused its discretion by eliminating reunification efforts and awarding guardianship." Respondent-Mother raises two issues on appeal: whether 1) "evidentiary and ultimate findings necessary to the trial court's conclusions were not supported by reliable evidence or reason" and 2) "the trial court abused its discretion by failing to apply relevant legal standards and follow statutory mandates." After careful review, we conclude that the trial court did not err in eliminating reunification as a permanent plan for either Respondent-Parent. However, the court did not make the requisite findings and conclusions to support its waiver of further review hearings, and we vacate this portion of the order.

### A. Standard of Review

Our review of a "permanency planning order is restricted to whether there is competent evidence in the record to support the findings of fact and whether the findings support the conclusions of law. Competent evidence is evidence that a

reasonable mind might accept as adequate to support the finding." *In re J.M.*, 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023) (cleaned up). "The trial court's findings of fact are conclusive on appeal if supported by any competent evidence. Uncontested findings of fact are likewise binding on appeal." *Id.* (citation omitted).

"The trial court's dispositional choices—including the decision to eliminate reunification from the permanent plan—are reviewed for abuse of discretion." *In re A.P.W.*, 378 N.C. 405, 410, 861 S.E.2d 819, 825–26 (2021). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re J.H.*, 373 N.C. 264, 268, 837 S.E.2d 847, 850 (2020) (citation omitted).

## B. Challenged Findings of Fact

Respondent-Parents each challenge a number of the findings of fact made by the trial court.[4] The findings that are not specifically challenged by either Respondent-Parent "are deemed to be supported by competent evidence and are binding on appeal." *In re L.R.L.B.*, 377 N.C. 311, 316, 857 S.E.2d 105, 111 (2021).

*Finding of Fact 8*

> 8. "The [c]ourt also adopts into these Findings of Fact, as orally amended, the [GAL]'s 'Amended Court Report' . . . filed the 27th day of March 2025. This 'Report' is incorporated into the record as evidence in this case."

---

[4] Beyond the findings considered in this section, Respondent-Father also challenges Findings of Fact 30 and 40, which found that "guardianship [was] in [Bill]'s best interest" and that "a primary permanent plan of guardianship [was] the best plan to achieve a safe, permanent home for [Bill] within a reasonable time period." These findings are addressed in Section C.

Respondent-Father argues that "the trial court . . . did not admit [the] GAL report into evidence." However, "[a]s a type of dispositional hearing, a permanency planning hearing may be informal and the court may consider written reports or other evidence concerning the needs of the juvenile." *In re J.H.*, 244 N.C. App. 255, 270, 780 S.E.2d 228, 239 (2015) (cleaned up). "[T]he trial court was free to consider the written report[ ] submitted by . . . the GAL . . . without a formal proffer and admission of these documents into evidence as exhibits." *Id.*

Thus, Finding of Fact 8 is supported by competent evidence.

*Findings of Fact 11, 19, and 37*

> 11. Respondent[-M]other has not completed substance[-]abuse outpatient services; submitted to all requested drug screens; maintained sobriety; and she has not submitted verification of employment for March 2025 and April 2025.
>
> . . . .
>
> 19. The main issues that brought [Bill] into [DHHS]'s custody were truancy and substance[-]abuse issues. Respondent[-M]other has submitted some negative drug screens, including April 1, 2025; however, she has not demonstrated a minimum of six (6) months sobriety in that she tested positive for methamphetamine in March 2025. Respondent[-F]ather has continued to test positive for marijuana use on his drug screens. [Bill] has been in [DHHS]'s custody for twenty-four (24) months, and substance abuse continues to be an issue for Respondent[-P]arents.
>
> . . . .
>
> 37. The [c]ourt further finds Respondent[-P]arents typically attend every other requested drug screen.

Respondent-Mother contests the finding that she had failed to maintain sobriety. She does not dispute the finding that she tested positive for methamphetamine in March 2025; rather, she challenges its significance as "the most reliably damning evidence." However, we review "the trial court's order to determine whether competent evidence supports the finding of fact and cannot reweigh the evidence when making this determination." *In re I.K.*, 377 N.C. 417, 426, 858 S.E.2d 607, 613 (2021). The court determined that Respondent-Mother had failed to maintain sobriety, and that finding is supported by the positive test; we cannot reweigh the significance of the test. Therefore, Findings 11 and 19 are supported by competent evidence.

As to Finding 37, the drug screen log submitted as part of the DHHS's report indicates that Respondent-Mother attended every other drug screen until 1 April 2025, which was her second consecutive attendance; the drug screen log from December 2024 contained this same alternating pattern. Respondent-Father attended all requested drug screens listed on the report, two of which were positive for marijuana. Finding 37 is supported by competent evidence as to Respondent-Mother but not to Respondent-Father, and we will disregard this erroneous finding as to him.

*Finding of Fact 35*

> 35. The [c]ourt finds that [Bill] repeated Kindergarten three (3) times due to . . . Respondent[-P]arents' drug abuse.

Respondent-Father argues that "[t]here is no evidence to support this finding." He is incorrect. The record contains the juvenile petition, which stated that Bill "had missed 22 days of school" in the current school year, of which "12 were unexcused absences." Bill's school had "tried repeatedly to engage . . . Respondent[-M]other about the absences, but . . . Respondent[-M]other would miss appointments or not respond." Bill "had missed 94 days the previous year. . . . This [was] [Bill's] 3rd time in kindergarten."

The GAL filed a prehearing report on 27 March 2025 which the court adopted into its findings of fact; this report reiterated Bill's absences and his need to repeat kindergarten three times and stated that "[t]hese truancy issues were believed to have been the result of the substance[-]abuse issues presented by [Respondent-Parents]." The juvenile petition and GAL report serve as competent evidence to support Finding of Fact 35.

*Finding of Fact 39*

> 39. That the conditions that led to the custody of [Bill] by [DHHS] and removal from the home of . . . Respondent[-P]arents continue to exist and return of [Bill] to the home of . . . [Respondent-P]arents would be contrary to the health and safety of [Bill].

Respondent-Father argues that "the trial court did not take judicial notice of the prior record" and "[t]he reason that [DHHS] became involved was not in evidence." However, we have held that "a trial court may take judicial notice of earlier proceedings in the same cause and that it is not necessary for either party to offer the

file into evidence." *In re M.N.C.*, 176 N.C. App. 114, 120, 625 S.E.2d 627, 632 (2006) (cleaned up). Nor is it "required" that a "trial judge expressly state[ ] [he or] she [is] taking judicial notice of prior orders in the cause." *Id.* at 121, 625 S.E.2d at 632. The reason DHHS became involved is part of the prior record, of which the trial court was free to take judicial notice.

Bill's truancy was raised as an issue in the juvenile petition. Also, DHHS filed a prehearing report on 10 April 2025 which the court adopted into its findings of fact in its order. The report stated that Respondent-Parents had "not demonstrated continued sobriety" and that Respondent-Father was "not currently engaged in substance[-]use services." Moreover, in its 5 May 2025 order, the court found that "[t]he main issues that brought [Bill] into [DHHS]'s custody were truancy and substance[-]abuse issues." Finding of Fact 39 is therefore supported by competent evidence.

In sum, each finding of fact challenged by Respondent-Parents—aside from Finding 37, which we shall disregard as it applies to Respondent-Father—is supported by competent evidence, making these findings "conclusive." *J.M.*, 384 N.C. at 591, 887 S.E.2d at 828 (citation omitted). The remaining findings are unchallenged by either Respondent-Parent and are likewise "binding on appeal." *L.R.L.B.*, 377 N.C. at 316, 857 S.E.2d at 111.

## C. Elimination of Reunification from the Permanent Plan

Respondent-Father argues that the "findings of fact do not support the

conclusions that continued efforts toward reunification would be futile or that Bill could not be placed with his parents within six months" and Respondent-Mother raises a similar argument. Respondent-Father further argues that "[t]he permanency planning order does not address whether either [Respondent-P]arent is actively participating in or cooperating with the plan," and Respondent-Mother argues that the "court made no findings regarding: whether [Respondent-P]arents were acting consistently with their son's health and safety; [Respondent-P]arents' availability to the [c]ourt or [the] GAL; [or] [Respondent-P]arents' participation in the plan or cooperation with the GAL."[5] (Citations omitted). Finally, both Respondent-Parents contend that the trial court abused its discretion in eliminating reunification from the permanent plan.

During an adjudicatory hearing, the trial court adjudicates "the existence or nonexistence of any of the conditions alleged in a [juvenile] petition": that the juvenile is either "abused, neglected, or dependent." N.C. Gen. Stat. §§ 7B-802, 7B-805. "If the court adjudicates the juvenile abused, neglected, or dependent, proceedings move to the dispositional phase, the purpose of which 'is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising

---

[5] Respondent-Mother also argues that the trial court "did not apply the 'best interest' standard required by N.C. Gen. Stat. § 7B-905.1(a)" when ordering visitation. Yet she neither explains why the visitation ordered was contrary to Bill's best interest, nor cites any caselaw in support of her argument. Consequently, we treat this argument as abandoned. *See* N.C.R. App. P. 28(a).

jurisdiction.' " *J.M.*, 384 N.C. at 592, 887 S.E.2d at 829 (quoting N.C. Gen. Stat. § 7B-900).

During the disposition stage, the trial court conducts permanency planning hearings, at each of which it "adopt[s] one or more . . . permanent plans." N.C. Gen. Stat. § 7B-906.2(a). The permanent plans may include, *inter alia*: "(1) Reunification as defined by [N.C. Gen. Stat. §] 7B-101"; "(2) Adoption under Article 3 of Chapter 48 of the General Statutes"; or "(3) Guardianship pursuant to [N.C. Gen. Stat. §] 7B-600(b)." *Id.* § 7B-906.2(a)(1)–(3). "At any permanency planning hearing where the juvenile is not placed with a parent," the trial court must consider certain criteria and make written findings as to any that are relevant, including "[w]hether it is possible for the juvenile to be placed with a parent within the next six months and, if not, why such placement is not in the juvenile's best interests." *Id.* § 7B-906.1(e)(1). "[T]he trial court's consideration of whether it is possible for the juvenile to be placed with a parent within the next six months" is something we can "infer[ ] from the findings." *In re L.L.*, 386 N.C. 706, 714, 909 S.E.2d 151, 158 (2024) (cleaned up).

"Concurrent planning shall continue until a permanent plan is or has been achieved." N.C. Gen. Stat. § 7B-906.2(a1). Subsection (b) provides:

> Reunification shall be a primary or secondary plan unless . . . the permanent plan is or has been achieved in accordance with subsection (a1) of this section, or the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety. The finding that reunification efforts clearly would be unsuccessful or inconsistent with

the juvenile's health or safety may be made at any permanency planning hearing, and if made, shall eliminate reunification as a plan.

*Id.* § 7B-906.2(b).

At a permanency planning hearing where reunification is eliminated, the trial court

shall make written findings as to each of the following, which shall demonstrate the degree of success or failure toward reunification:

(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.

(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.

(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.

(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

*Id.* § 7B-906.2(d)(1)–(4).

"While use of the actual statutory language is the best practice, [N.C. Gen. Stat. § 7B-906.2(d)] does not demand a verbatim recitation of its language." *In re H.A.J.*, 377 N.C. 43, 49, 855 S.E.2d 464, 469 (2021) (cleaned up). "Instead, the order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." *Id.*

at 49, 855 S.E.2d at 470 (cleaned up).

Respondent-Mother focuses her argument on the possibility that Bill could be reunited with her within six months, reasoning that if "reunification [were] *possible* in the next six months, then reason would certainly exclude it from being 'futile,' per finding 34." In other words, because reunification may be possible, then it is not clear that reunification would be unsuccessful and reunification should remain part of Bill's permanent plan. Yet theoretical possibility is not the dispositive issue. "[I]t is patently unrealistic to expect trial courts to determine whether an event is or is not possible, and where a literal interpretation of the language of a statute will lead to absurd results, . . . the reason and purpose of the law shall control." *In re T.R.M.*, 188 N.C. App. 773, 779–80, 656 S.E.2d 626, 630–31 (2008) (declining to remand where the trial court found that a juvenile's return home was "improbable").

The trial court found that Bill had "been in the custody of [DHHS] for twenty-four (24) months" and that "[t]he main issues that brought [Bill] into [DHHS]'s custody were truancy and substance[-]abuse issues. . . . [S]ubstance abuse continues to be an issue for Respondent[-P]arents." Because the issues that led to Bill's removal from the home were still present 24 months later, the trial court was justified in concluding that "continued efforts toward reunification would be futile," which supports the elimination of reunification from the permanent plan.

Concerning the factors under N.C. Gen. Stat. § 7B-906.2(d), it is apparent that the trial court addressed factors (d)(1), "[w]hether the parent is making adequate

progress within a reasonable period of time under the plan"; (d)(2), "[w]hether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile"; and (d)(4), "[w]hether the parent is acting in a manner inconsistent with the health or safety of the juvenile." N.C. Gen. Stat. § 7B-906.2(d)(1)–(2), (4).

As to factor (d)(1), the trial court found that although Respondent-Parents had been working on their case plans for two years, major elements of those plans remained uncompleted. *See L.R.L.B.*, 377 N.C. at 322, 857 S.E.2d at 115 (determining that "the trial court addresse[d] . . . whether each parent [was] making adequate progress within a reasonable time under the permanent plan by detailing their achievements and shortcomings in meeting the conditions of their respective case plans"). The court acknowledged everything that Respondent-Parents had accomplished under the plan, as well as their numerous shortcomings, satisfying (d)(2): Respondent-Father had neither "provided proof of employment; provided proof of stable housing; enrolled in substance[-]abuse outpatient treatment; [nor] . . . demonstrated continued sobriety." Respondent-Mother had been "discharged from outpatient treatment due to noncompliance" and had neither "completed substance[-]abuse outpatient services; submitted to all requested drug screens; maintained sobriety; [nor] . . . submitted verification of employment for March 2025 and April

2025."[6] Finally, the court's findings that Respondent-Parents had not demonstrated six months of sobriety, when their substance abuse was a direct cause of DHHS removing Bill from the home, satisfy factor (d)(4).

However, as Respondent-Mother argues, the trial court's findings under (d)(3)—whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile—are insufficient, as they are limited to Respondent-Parents' communications with DHHS concerning visitation and Respondent-Father's attendance at a permanency planning review meeting. Nevertheless, as our Supreme Court has explained, "[t]o obtain relief on appeal, an appellant must not only show error, but that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." *Id.* at 326, 857 S.E.2d at 118 (cleaned up).

Here, we discern no prejudice in the trial court's failure to make more robust findings under (d)(3), given that the court's motivation in eliminating reunification was clearly driven by Respondent-Parents' inability to maintain sobriety. However, upon remand, we direct the trial court to make "additional findings in contemplation of [N.C. Gen. Stat.] § 7B-906.2(d)(3)." *Id.* If these additional findings do not change the court's "finding under [N.C. Gen. Stat.] § 7B-906.2(b) that further reunification

---

[6] Respondent-Mother asserts that the trial court erred in failing to make a finding concerning Respondent-Parents' cooperation with the GAL. These findings imply cooperation, or lack thereof, given that the GAL's recommendations for Respondent-Parents were "[a]s per their case plans."

efforts are clearly futile or inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time, then the trial court may simply amend its permanency planning order to include the additional findings." *Id.* at 327, 857 S.E.2d at 118 (cleaned up). If the court concludes that "its decision to eliminate reunification from the . . . permanent plan . . . was in error, then the trial court shall vacate said order . . . , enter a new permanent plan for the juvenile that includes reunification, and resume the permanency planning review process." *Id.*

Finally, the trial court found that "guardianship [was] in [Bill]'s best interest," and that "a primary permanent plan of guardianship [was] the best plan to achieve a safe, permanent home for [Bill] within a reasonable time period." Respondent-Father challenges these ultimate findings, arguing that "the court's decision that guardianship was in Bill's best interest" was "unsupported by reason" and that the elimination of reunification was an abuse of the court's discretion. However, as set out above, Respondent-Parents had still not resolved the conditions that led to Bill's removal after two years of DHHS intervention; accordingly, these findings are supported by competent evidence, and the court did not abuse its discretion by eliminating reunification.

## D. Waiver of Further Review Hearings

Finally, we address Respondent-Parents' argument that the trial court erred by waiving further review hearings.

In juvenile proceedings, the trial court must conduct review hearings at least

every six months. N.C. Gen. Stat. § 7B-906.1(a). N.C. Gen. Stat. § 7B-906.1(n)

provides that a trial court

> may waive the holding of hearings required by this
> section . . . if the court finds by clear, cogent, and
> convincing evidence each of the following:
>
> (1) The juvenile has resided in the placement for a
> period of at least one year or the juvenile has resided
> in the placement for at least six consecutive months
> and the court enters a consent order pursuant to
> [N.C. Gen. Stat. §] 7B-801(b1).
>
> (2) The placement is stable and continuation of the
> placement is in the juvenile's best interests.
>
> (3) Neither the juvenile's best interests nor the
> rights of any party require that permanency
> planning hearings be held every six months.
>
> (4) All parties are aware that the matter may be
> brought before the court for review at any time by
> the filing of a motion for review or on the court's own
> motion.
>
> (5) The court order has designated the relative or
> other suitable person as the juvenile's permanent
> custodian or guardian of the person.

The trial court must make written findings of fact satisfying each of these

criteria, and its failure to do so constitutes reversible error. *In re P.A.*, 241 N.C. App.

53, 66, 772 S.E.2d 240, 249 (2015). In addition, the best practice is for a court to

affirmatively recite the applicable standard of proof in its order. *In re E.M.*, 249 N.C.

App. 44, 56, 790 S.E.2d 863, 873 (2016). Nonetheless, the failure to do so may not

constitute prejudicial error where the record "viewed in its entirety clearly reveals

that the court applied the proper evidentiary standard," *id.* (citation omitted), or where the court states the appropriate standard of proof in open court, *In re M.D., N.D.*, 200 N.C. App. 35, 39, 682 S.E.2d 780, 783 (2009).

In the present case, although the trial court made the requisite findings under N.C. Gen. Stat. § 7B-906.1(n), the court did not indicate the evidentiary standard that it employed or state the standard during the hearing. Accordingly, we review the record to determine whether it is apparent that the trial court applied the correct standard. The record shows that the trial court had clear, cogent, and convincing evidence upon which to make the required findings for items (1)–(2) and (5) of N.C. Gen. Stat. § 7B-906.1(n), but lacked that evidence for items (3)–(4).

First, it is not apparent that the trial court's finding pursuant to (n)(3), which requires a finding that "the rights of [the parents do not] require that permanency planning hearings be held every six months," was based on clear, cogent, and convincing evidence. N.C. Gen. Stat. § 7B-906.1(n)(3). Respondent-Mother had several negative drug tests, the GAL testified that Respondent-Parents had "complied with a lot of what's been going on," and the trial court admitted that the Respondent-Parents had "made some progress forward." In its findings of fact, the trial court does not explain why, in light of this evidence, further hearings would not be required; instead, it merely repeated the language of the statute (albeit incorrectly stating the time period was "every twelve (12) months"). Moreover, we cannot determine whether the trial court, given its failure to cite the standard of proof in

either its order or in open court, based this finding on clear, cogent, and convincing evidence.

Finally, item (4) states that "[a]ll parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion." *Id.* § 7B-906.1(n)(4). Our review of the transcript and record reveals no communication from the trial court to Respondent-Parents as to this fact.

Accordingly, we vacate that portion of the order waiving future review hearings and remand for additional findings of fact consistent with the requirements of N.C. Gen. Stat. § 7B-906.1(n).

### III.    Conclusion

Our review of the transcript and record reveals no prejudicial error in the trial court's elimination of reunification as a permanent plan. However, the trial court failed to make appropriate findings under N.C. Gen. Stat. § 7B-906.2(d)(3), and thus we remand this matter to the trial court for appropriate findings consistent with this subsection and for the court's determination whether those findings affect its decision to eliminate reunification from the permanent plan.

We further conclude that it is not clear from the record that the trial court had the clear, cogent, and convincing evidence upon which to make its findings under N.C. Gen. Stat. § 7B-906.1(n)(3)–(4); we accordingly vacate the portion of the order waiving future review hearings and remand for the entry of appropriate findings. The court

may, in its discretion, "receive additional evidence on this remand . . . and shall enter new or amended orders consistent with this opinion." *L.R.L.B.*, 377 N.C. at 328, 857 S.E.2d at 119.

VACATED IN PART AND REMANDED.

Chief Judge DILLON and Judge COLLINS concur.

Report per Rule 30(e).